No. 13710

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

DAVID L. AZURE,

Defendant and Appellant.

Appeal from:   District Court of the Twelfth Judicial District,
               HOnorable B. W. Thomas, Judge presiding.

Counsel of Record:

     For Appellant:

          Donald A. Ranstrom argued, Chinook, Montana
          Robert D. Morrison, Havre, Montana

     For Respondent:

          Hon. Mike Greely, Attorney General, Helena, Montana
          J. Mayo Ashley, Assistant Attorney General, argued,
          Helena, Montana
          William M. Solem, County Attorney, Chinook, Montana

                         Submitted:   September 16, 1977

                         Decided: DEC 3 0 1977

Filed:   DEC 3 0

Thomas J. Kearney
Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Defendant David L. Azure appeals from a judgment entered in the District Court, Blaine County, upon a plea of guilty to the crime of deliberate homicide, in violation of section 94-5-102(1)(a), R.C.M. 1947.

The sole issue on appeal is whether the District Court abused its discretion in denying defendant's motion to withdraw his guilty plea. While not specifically discussed by either party at the District Court level or in their briefs on appeal, we confine our ruling to the arraignment record, as we deem it to be controlling.

On June 29, 1976, defendant was charged by Information filed in Blaine County District Court with the deliberate homicide of Randy Lewis, who was shot and killed while sitting in a parked vehicle near Chinook, Montana. On the same day, the District Court ordered defendant to undergo psychiatric evaluation at Warm Springs State Hospital. This evaluation concluded defendant was able to understand the charges against him and to assist in his defense.

On September 14, 1976, after his return from Warm Springs, defendant appeared in court, with appointed counsel, and entered a plea of guilty to the charge of deliberate homicide. Before accepting his plea, the district judge examined defendant:

"Q. And, before accepting your plea, Mr. Azure, its the desire of the Court to ask you some questions so that it can be established of record that you know what you are doing and that this is your own voluntary decision here. A. Yes.

"Q. First of all, I will remind you that you have the right to a speedy trial if you should enter a plea of not guilty. That you do have the right to enter a plea of not guilty. And, that you could be represented throughout the trial by an attorney. That you could require the state to produce witnesses to testify in your presence subject to cross-examination by your attorney and that you would have the right to testify for yourself if you wanted to do that. You also have the right to remain silent and could remain silent during the trial. Do you understand that you have those rights? A. Yes.

"Q. And, do you understand by a plea of guilty that you are giving up those rights? A. Yes.

"Q. In making a plea today, are you acting on the basis of any promises that have been made to you? A. No, sir.

"Q. And, so, at this time, you don't feel that any promises have been made by any law enforcement officer as to what would be done in your case? A. No, sir.

"Q. And do you feel that you are acting as a result of any compulsion or any threats that have been made against you? A. No.

"Q. Do you understand in making your plea today, that you are leaving the disposition of this case up to the Court? It will be up to the Court to decide what will be done in this case? A. Yes, sir.

"Q. And, do you understand, also, what the Court could do, what the maximum penalty the Court could impose in this case? A. Yes, sir.

"Q. What is your understanding of that? A. Death penalty.

"Q. What do you understand that you are admitting? You do understand when you entered a plea today that you are admitting that you did certain things alleged in the information. What would be your understanding as to what you are admitting here? A. That I did shoot and kill Randy Lewis.

"Q. And, you understand, also that you admit that this occurred in Blaine county, Montana, on June 23, 1976? A. Yes, sir.

"Q. And further, you are admitting that you did this purposely or knowingly? A. Yes, sir.

"Q. Can you tell me at this time why you have decided to enter a plea of guilty? A. Because there are too many witnesses and I know that I did it and I figure there is just no way around it.

"Q. Do you feel that if you stood trial that the state would have enough evidence to convict you? A. Yes, sir.

"Q. And, Mr. Ranstrom, you feel you have had adequate time to go over this with the defendant?

"MR. RANSTROM: [Counsel for defendant] Yes, Your Honor, I have.

"THE COURT: And, do you concur with the plea that the defendant has made?

"MR. RANSTROM: Yes. I do.

"THE COURT: Do you feel you have had sufficient
time to talk to Mr. Ranstrom about this? A. Yes.
I have.

"Q. And, do you have any question in your mind or
any dissatisfaction with any services that Mr. Ranstrom
has performed for you up to this time? A. No, sir."

The District Court then set pronouncement of judgment and sentencing
for October 19, 1976.

Approximately ten days after pleading guilty, defendant
wrote to the district judge, requesting appointment of new counsel.
On September 28, 1976, at the hearing held on this request, defendant
indicated he was dissatisfied because his counsel had not promptly
moved to change his plea from guilty to not guilty. Defendant stated
that after entering his guilty plea, he felt he had not been fully
responsible for his actions on the night of the shooting, due to
intoxication. Defendant requested his counsel to file a motion to
withdraw the guilty plea. Counsel did not immediately make such a
motion, telling defendant he wanted first to check on some things,
and defendant then wrote to the district judge. During this Sep-
tember 28 hearing defendant withdrew his request that his attorney
be removed and another appointed. The court ruled that his present
counsel remain on the case.

On November 3, 1976, a hearing was held on defendant's for-
mal motion for leave to withdraw his guilty plea. Extensive testi-
mony was given by defendant as to the circumstances surrounding his
actions on the night of the shooting. In his account, defendant
stated he had been under the influence of drugs and alcohol and was
emotionally depressed when the shooting occurred. Defendant stated
he learned these factors might tend to lessen his responsibility
for his actions after his entry of the guilty plea, and he then
decided to change his plea to not guilty and to proceed to trial.

The District Court denied defendant's motion by order dated
November 23, 1976. The order was made by minute entry, and we note

-4-

the record shows neither an explanation of nor a reason for this ruling. When a motion is addressed to the discretion of the court, as is a motion for leave to withdraw a guilty plea, the touchstone on review is abuse of that discretion. A District Court's failure to provide even a skeletal record of its reasoning in support of its ruling on such a motion may of itself call into question the soundness of the court's exercise of its discretion. This is unfortunate as well as unnecessary, and we urge the District Courts to set out reasons for their rulings on motions of this nature.

Following denial of this motion and a presentence hearing, defendant was sentenced to a sixty year prison term with credit for time served.

Defendant argues that when he plead guilty to the charge of deliberate homicide he was not aware that, under the facts of his case, he may have been guilty only of mitigated deliberate homicide.

Under section 94-5-101, R.C.M. 1947, criminal homicide constitutes three distinct crimes: deliberate homicide, mitigated deliberate homicide, and negligent homicide. Both deliberate homicide and mitigated deliberate homicide can be established by proof that the accused purposely or knowingly caused the death of another human being. Substantively, the difference between these two crimes is that mitigated deliberate homicide includes an additional, extenuating element; it is defined in section 94-5-103(1), R.C.M. 1947:

> "Criminal homicide constitutes mitigated deliberate homicide when a homicide which would be deliberate homicide is committed under the influence of extreme mental or emotional stress for which there is a reasonable explanation or excuse. The reasonableness of such explanation or excuse shall be determined from the viewpoint of a reasonable person in the actor's situation."

Ultimately, the most telling difference between deliberate, and mitigated deliberate homicide is in the maximum sentence that can be received upon conviction of one or the other. A person convicted

on a charge of deliberate homicide is punishable by imprisonment for up to 100 years, or under certain circumstances, by death. Mitigated deliberate homicide carries a maximum sentence of 40 years imprisonment.

If this case had proceeded to trial, and defendant presented evidence tending to show mitigating circumstances, he would have been entitled to an instruction on the law of mitigated deliberate homicide. This follows from the fundamental rule the court's instructions should cover every issue or theory having support in the evidence. State v. Taylor (1973), 163 Mont. 106, 116, 515 P.2d 695; State v. Thomas (1966), 147 Mont. 325, 331, 413 P.2d 315. This Court stated in Thomas:

> "'* * * on the trial of an indictment for murder, the court is required to instruct not only as to that offense, but also as to all the inferior degrees of homicide * * * to which the evidence is properly applicable and of which the jury would be warranted in finding the accused guilty * * *.'" 147 Mont. 331.

Section 95-1606, R.C.M. 1947, Procedure on arraignment, provides in pertinent part:

> " * * *
>
> "(e) * * * The court may refuse to accept a plea of guilty and shall not accept the plea of guilty without first determining that the plea is voluntary with an understanding of the charge."

This statute imposes upon the court the duty to determine that the accused understands the charge to which he is pleading guilty, before that plea may be accepted.

In the handling of the motion to withdraw the plea, neither the defendant nor the state discussed whether the record of the arraignment itself disclosed that the defendant had a clear understanding of the charge. In their arguments to this Court, they argued only as to the actual hearing on the motion to withdraw the guilty plea. That is not enough. The record itself demonstrates that defendant was not sufficiently informed of the difference between deliberate homicide and mitigated deliberate homicide.

-6-

The District Court's examination of defendant at the time of entry of his plea included only two questions as to defendant's understanding of the crime of deliberate homicide: (1) whether defendant knew the maximum penalty which could be imposed, to which defendant replied he could receive the death penalty; and (2) whether defendant understood he was admitting he shot and killed Randy Lewis "purposely or knowingly" and defendant answered "yes". The court did not explain the meaning of "purposely or knowingly".

The District Court made no inquiry as to whether defendant understood that by purposely or knowingly causing the death of Randy Lewis he may have committed either deliberate homicide or mitigated deliberate homicide. Nor was defendant informed that if he went to trial on the charge of deliberate homicide, he would have the right to present evidence of mitigation, and if the jury accepted his version of the offense and convicted him of mitigated deliberate homicide, the maximum sentence he could receive would be a 40 year prison term.

It is doubtful that an accused who has not been informed of these factors can plead voluntarily with an understanding of the charge as required by section 95-1606(e), R.C.M. 1947. The differences between deliberate homicide and mitigated deliberate homicide in terms of the disparity in the maximum sentences which can be imposed and social stigma which attaches upon conviction of one or the other is profound. But for the additional mitigating element, they are established by proof of the same facts. They are deceptively similar.

When an accused pleads guilty to the crime of deliberate homicide charged under Montana's statutory scheme which sets out distinct kinds of criminal homicide, it is of vital importance that the record discloses the defendant had a full understanding of the precise kind of homicide to which he plead. Absent such a showing,

this Court will not assume the plea was made "with an understanding of the charge".

In Jones v. State of Montana, 235 F.Supp 673 (D. Mont. 1964), the Federal District Court found a denial of due process in the acceptance of a guilty plea to a charge of first degree burglary where it was shown the accused had not been informed as to the difference between first and second degree burglary prior to entry of his plea. While our decision in the present case concerns statutory rather than Constitutional requirements, virtually every criminal procedure statute seeks to assure that an accused is afforded the kind of fundamental fairness guaranteed by the due process clause. As the court stated in Jones, 235 F.Supp. at 676:

> " * * * Real notice and understanding by a defendant of the true nature of the charge against him is the first and most universally recognized requirement of due process. * * * Understanding of the nature of the charge is indispensable to a valid plea of guilty. * * * "

Because the District Court did not determine whether defendant understood the differing elements and effects of deliberate homicide and mitigated deliberate homicide, we hold that acceptance of his plea of guilty was improper. The District Court should have granted defendant's motion for leave to withdraw the guilty plea.

Accordingly, the judgment and sentence is vacated, the District Court is instructed to allow the withdrawal of the guilty plea, and to undertake such further proceedings as are consistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

-8-