No. 14546

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

———————————

THE STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

BRAD WILLIAM HUTTINGER,

Defendant and Appellant.

———————————

Appeal from: District Court of the Eighth Judicial District,
Honorable H. William Coder, Judge presiding.

Counsel of Record:

For Appellant:

Ralph T. Randono argued, Great Falls, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Chris Tweeten argued, Assistant Attorney General,
Helena, Montana
J. Fred Bourdeau, County Attorney, Great Falls, Montana

———————————

Submitted: May 3, 1979

Decided: MAY 22 1979

Filed:

*Thomas J. Kearney*
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

Defendant Brad Huttinger appeals from the order of the District Court of Cascade County, the Honorable H. William Coder, denying his motion to withdraw a plea of guilty to the charge of deliberate homicide. The District Court postponed sentencing pending the final disposition of this appeal. Huttinger remains at Warm Springs State Hospital where he was sent pending sentencing.

On July 9, 1976, Huttinger was charged with the crimes of deliberate homicide and aggravated kidnapping in the stabbing death of an elderly Great Falls woman. The District Court ordered a psychiatric evaluation of Huttinger which was conducted on August 4, 1976. The reporting psychiatrist, Dr. Ronald Hughes, concluded that on the date of the crimes charged that Huttinger, although under the influence of a variety of psychoactive drugs, "knew the difference between right and wrong insofar as it is related to the charges against him" and did not "lack the ability to adhere to the right." (Ultimately, however, Dr. Hughes recommended that Huttinger be hospitalized in the maximum security ward at Warm Springs State Hospital.)

On December 3, 1976, Huttinger entered a plea of not guilty to the offense charged. On February 14, 1977, Huttinger allegedly changed his plea to guilty on the charge of deliberate homicide in exchange for a dismissal of the charge of aggravated kidnapping.

Immediately after the February 14 proceedings, Huttinger was sent to Warm Springs State Hospital for a complete psychiatric evaluation. The examining psychiatrist, Dr. William Alexander, concluded:

"Summary: There is no evidence of organic involvement. Patient is felt to be psychotic because of his flat affect, his intellectual deterioration, and his inability to handle abstract concepts. His actual illness is quite well encapsulated. He seems to be a compulsive type who has a great deal of internal hostility which is barely controlled most of the time. He has a great difficulty in trying to sort out his feelings about his normal passivity in relationship to the occasional outbursts of aggression. There is a great deal of anxiety which is related to his fears of losing control over himself.

"Patient is aware of the nature of the charges against him and has the ability to assist his lawyer in his own defense. He is also aware of the criminality of his actions. Because of his severe emotional problems he has been unable to conduct himself according to the requirements of the law. He is able to have a particular state of mind which is an element of the offense charged.

"Diagnosis: Schizophrenia, paranoid type."

In a clarifying letter received on July 25, 1977, Dr. Alexander wrote to the District Court:

"In my opinion, at the time of the incident, this patient was unable to conduct himself according to the requirements of the law because of his severe, chronic, emotional illness which probably started in very early childhood but was certainly present eight years ago, and for which he has, to my knowledge, never received treatment."

On September 1, 1977, the District Court sentenced Huttinger to 100 years in prison without parole. Huttinger appealed the sentence and on April 10, 1978, this Court, in an unreported per curiam order, vacated the sentence pursuant to a stipulation of counsel and remanded the case for resentencing.

Huttinger thereafter filed a Motion for Leave of Court for Motion to Withdraw Plea of Guilty on May 26, 1978. At a hearing on this motion, Huttinger asserted that, prior to originally entering his plea of guilty to the charge of deliberate homicide, he had not been informed of the availability of the possible defense of insanity or that other

-3-

factors present at the time of the crime charged might serve to mitigate his sentence. The State presented testimony of Huttinger's attorneys at the time of entry of his plea of guilty to the effect that they had discussed the insanity defense with Huttinger and he had rejected it.

On August 10, 1978, the District Court entered findings, conclusions, and an order denying Huttinger's motion. Huttinger appeals.

The issue presented for this Court's review is:

Did the District Court abuse its discretion in denying Huttinger's motion to withdraw his plea of guilty?

This appeal requires a balancing of three conflicting factors or aspects involved in a criminal defendant's attempt to withdraw a previously entered plea of guilty. The three factors of which we speak are (1) the adequacy of the interrogation by the District Court of the defendant at the entry of the guilty plea as to the defendant's understanding of the consequences of his plea, (2) the promptness with which the defendant attempts to withdraw the prior plea, and (3) the fact that the defendant's plea was apparently the result of a plea bargain in which the guilty plea was given in exchange for dismissal of another charge, in this case, aggravated kidnapping, a felony. All three factors, among others, have been discussed in previous cases as considerations in the determination of whether a District Court should allow the withdrawal of a guilty plea.

Before discussing these particular factors, we first state some general principles governing the withdrawal of a guilty plea. The right of a criminal defendant to a trial by jury is safeguarded by Art. II, Sections 24 and 26 of the

1972 Montana Constitution. Section 95-1606(e), R.C.M. 1947, now section 46-12-204 MCA, states in part:

> "The defendant shall enter a plea of guilty or not guilty to the indictment, information or complaint. If the defendant refuses to plead to the indictment, information or complaint a plea of not guilty must be entered.
>
> "The court may refuse to accept a plea of guilty and shall not accept the plea of guilty without first determining that the plea is voluntary with an understanding of the charge."

More specifically, section 95-1902, R.C.M. 1947, now section 46-16-105(2) MCA, states in part:

> "At any time before or after judgment the court may for good cause shown permit the plea of guilty to be withdrawn and a plea of not guilty substituted."

"There is no set rule or standard which can be relied on in any given case where a motion is made to withdraw a guilty plea." State v. Lewis (1978), _____ Mont. _____, 582 P.2d 346, 352, 35 St.Rep. 1089, 1096. "Each case must be examined on its own record . . ." State v. Griffin (1975), 167 Mont. 11, 21, 535 P.2d 498, 503.

> "The granting or refusal of permission to withdraw a plea of guilty and substitute a plea of not guilty rests in the discretion of the trial court and is subject to review only upon a showing of an abuse of discretion. State v. Nance, (1947), 120 Mont. 152, 184 P.2d 554.
>
> "A plea of guilty will be deemed involuntary where it appears that the defendant was laboring under such a strong inducement, fundamental mistake, or serious mental condition that the possibility exists he may have plead guilty to a crime of which he is innocent." State ex rel. Gladue v. Eighth Judicial District (1978), _____ Mont. _____, 575 P.2d 65, 66, 35 St.Rep. 220, 221-22.

If, however, there is any doubt that a plea is not voluntary, the doubt should be resolved in the defendant's favor. On application to change a plea, all doubts should be resolved in favor of a trial on the merits. State v.

Doty (1977), ____ Mont. ____, 566 P.2d 1388, 1391, 34 St.
Rep. 731, 734.

With these general principles in mind, we proceed to an
examination of the three factors described above.

Adequacy of District Court's Interrogation. For ease
of analysis, we find it helpful to set forth the complete
transcript of the hearing at which Huttinger allegedly made
his guilty plea:

> "THE COURT: Ladies and Gentlemen, this Court
> will now be in session. This is the State of
> Montana against Brad William Huttinger, Cause
> No. 6857 A. Mr. Barron, you are representing
> the defendant, Mr. Huttinger, in this matter?
>
> "MR. BARRON: I do.
>
> "THE COURT: And it is of course understood at
> this point in time you wish to enter a change
> of plea in this case; it that correct?
>
> "MR. BARRON: Yes, your Honor. Mr. Huttinger
> would ask leave to withdraw his plea of Not
> Guilty to Deliberate Homicide.
>
> "THE COURT: You understand what a plea of guilty
> entails in this matter, do you not, Mr. Huttinger?
>
> "MR. HUTTINGER: Yes; I do.
>
> "THE COURT: You understand that change of plea,
> you waive your right to remain silent? You under-
> stand that?
>
> "MR. HUTTINGER: Yes.
>
> "THE COURT: You understand that you waive your
> right to counsel to represent you in this matter?
> You understand that?
>
> "MR. HUTTINGER: Yes.
>
> "THE COURT: You waive your right to a jury trial,
> you understand that?
>
> "MR. HUTTINGER: Yes.
>
> "THE COURT: You also understand that you waive
> your right to compel attendance of witnesses to
> appear and testify on your behalf; you understand
> that?
>
> "MR. HUTTINGER: Yes.

"THE COURT: You understand the penalty for Deliberate Homicide in the State of Montana is imprisonment in the Montana State Prison, Deer Lodge, for a term not to exceed one hundred years; you understand that?

"MR. HUTTINGER: Yes.

"THE COURT: It is also the court's understanding, Mr. Barron, that there have been some negotiations with regard to dismissal of the other count of Aggravated Kidnapping; is that correct?

"MR. BARRON: That is correct, your Honor. We are informed by Mr. Bourdeau he will dismiss the Aggravated Kidnapping charge.

"THE COURT: Mr. Bourdeau?

"MR. BOURDEAU: Yes, your Honor. At this time the prosecution will orally move the Court for permission to dismiss the charge of Aggravated Kidnapping heretofore filed in this action.

"THE COURT: Okay. At this point in time, Mr. Huttinger, it is incumbent upon the Court to ascertain and make a factual basis for the plea of guilty. You understand what the Court is indicating now?

"MR. HUTTINGER: Yes.

"THE COURT: You do at this time admit, after waiving your rights, that there was a deliberate homicide committed on the date alleged?

"MR. HUTTINGER: Yes.

"THE COURT: All right, Mr. Huttinger. The Court will accept your plea of Guilty to Deliberate Homicide, and the Court will also accept the County Attorney's motion to dismiss the Aggravated Kidnapping in this matter. By virtue of the nature of this case, Mr. Huttinger, the Court will order a pre-sentence investigation, and it is the Court's understanding at this point in time from your counsel, Mr. Barron, that he would like to have, as a part of the pre-sentence investigation, an examination by Dr. Alexander at the Warm Springs State Hospital; is that correct?

"MR. BARRON: That's right, your Honor.

"THE COURT: The Court will accept a plea of Guilty in this matter, Mr. Huttinger. I will set the hearing on the sentencing March 14, 1977, at 2 P.M. and the Court will order you transferred to Warm Springs for an examination prior to the sentencing.

-7-

"MR. BARRON: Your Honor, there have been two reports received by the Court, one psychological evaluation, one psychiatric evaluation from our Mental Health Clinic here. I would like permission from the Court to have the Clerk copy those and furnish me with copies, and as a part of the pre-sentence report, we would also like to have Mr. Huttinger's reports from Miles City and Twin Bridges in order to make it a complete report to the Court.

"THE COURT: All right. For purposes of sentencing have the Court file made available to you.

"MR. BARRON: Thank you.

"COURT ADJOURNED." (Emphasis added.)

Review of this transcript reveals several serious inadequacies. At the most basic, it appears that Huttinger never really did admit, in so many words, that he committed any deliberate homicide, only that such a homicide was committed. Neither did he actually plead guilty to any offense at all; he only asked "leave to withdraw his plea of Not Guilty."

Beyond these perhaps technical or semantic discrepancies, however, there are more serious flaws. Never was the name of the victim stated or the date or place of the alleged offense specified; nothing to identify the particular crime to which Huttinger allegedly was pleading specifically appears in the transcript. The underlying facts of the offense were not stated or admitted. In short, Huttinger did not plead anything to any offense specified in any manner.

Further, the District Court did not ascertain particularly that defendant was satisfied with his appointed counsel or that he thought his counsel was competent. Finally, the voluntariness of the guilty plea is called further into question by the fact that immediately after entry of the plea, Huttinger was sent to Warm Springs State

-8-

Hospital for psychiatric examination and treatment. He remained at Warm Springs for over six months before being sentenced and is currently being held at Warm Springs pending this appeal. The question naturally arises, was Huttinger competent to enter any plea?

In State v. Lewis, 582 P.2d at 352, 35 St.Rep. at 1097, we held:

> ". . . when in the sentencing procedure, the District Court carefully, as here, examines the defendant, finds him to be competent, and determines from him that his plea of guilty is voluntary, he understands the charge and his possible punishment, he is not acting under the influence of drugs or alcohol, he admits his counsel is competent and he has been well advised, and he declares in open court the facts upon which his guilt is based, then a plea of guilty accepted by the District Court on the basis of that examination will be upheld . . ."

When compared to these standards, the interrogation of Huttinger by the District Court in the instant case falls short on all counts.

There is one other respect in which the District Court interrogation is inadequate. In State v. Azure (1977), ___ Mont. ____, 573 P.2d 179, 34 St.Rep. 1569, this Court vacated the judgment and sentence and instructed the District Court to allow the withdrawal of the guilty plea. We stated as our rationale:

> "The District Court made no inquiry as to whether defendant understood that by purposely or knowingly causing the death of Randy Lewis he may have committed either deliberate homicide or mitigated deliberate homicide. Nor was defendant informed that if he went to trial on the charge of deliberate homicide, he would have the right to present evidence of mitigation, and if the jury accepted his version of the offense and convicted him of mitigated deliberate homicide, the maximum sentence he could receive would be a 40 year prison term.
>
> ". . .

"When an accused pleads guilty to the crime of
deliberate homicide charged under Montana's
statutory scheme which sets out distinct kinds
of criminal homicide, it is of vital importance
that the record discloses the defendant had a
full understanding of the precise kind of homi-
cide to which he plead.  Absent such a showing,
this Court will not assume the plea was made
'with an understanding of the charge.'

". . .

"Because the District Court did not determine
whether defendant understood the differing ele-
ments and effects of deliberate homicide and
mitigated deliberate homicide, we hold that ac-
ceptance of his plea of guilty was improper.
The District Court should have granted defen-
dant's motion for leave to withdraw the guilty
plea."  573 P.2d at 183, 34 St.Rep. at 1574,
1575.

We conclude that the instant appeal is governed by

Azure, at least so far as consideration of the adequacy of

the District Court's interrogation.  In neither case was the

defendant informed of the differing elements of homicide,

although in both cases the District Court knew, or should

have known, of possible evidence of mitigating circumstances--

in both cases the defendant was under the influence of drugs

and alcohol and possibly suffering from mental distress or

instability.  In both cases, the defendant appeared in court

with appointed counsel and entered a plea of guilty to the

charge of deliberate homicide.  When compared to the Dis-

trict Court interrogation found inadequate in Azure, the

interrogation of the defendant here is even less sufficient.

The State's argument that we should not retroactively

apply Azure (or presumably Lewis) is not persuasive.  While

it is true that Azure was decided after the original entry

of the guilty plea, it was decided before Huttinger's motion

to withdraw his plea and before he had been sentenced.

Even more important, however, is that the equities of

the situation and the ends of justice favor application of

these later cases to the instant appeal. By applying them, we are not releasing Huttinger from his possible criminal liability. Rather, the case would merely go to trial. As we stated in Doty, 566 P.2d at 1391, 34 St.Rep. at 734-35:

> "Here, any irregularity and doubt should have been resolved by the trial court in favor of defendant, in his motion for a change of plea; then that doubt could properly be resolved by a jury. Only through trial on the merits following a change of plea would the ends of justice best be served in this case."

In any event, the rules stated in Azure and Lewis are not new. The law in both cases can be traced back through many decisions over many years. See, e.g., State v. Casaras (1937), 104 Mont. 404, 66 P.2d 774; State v. Nance (1947), 120 Mont. 152, 184 P.2d 554; State v. McBane (1954), 128 Mont. 369, 275 P.2d 218.

Having concluded that the interrogation of Huttinger by the District Court was inadequate for determining whether his guilty plea was voluntarily given, we proceed to consideration of the effect of the two additional factors specified earlier.

Timeliness of the Motion to Withdraw. In State v. Lewis, 582 P.2d at 352, 35 St.Rep. at 1096, and State v. Sattler (1976), 170 Mont. 35, 549 P.2d 1080, 1081, this Court held that a claim of laches may lie against a motion to withdraw a guilty plea in cases where the records upon which the plea of guilty was entered are missing, the witnesses are unavailable, or evidence has been disposed of. The State asserts that laches should similarly bar Huttinger's motion here.

Huttinger first entered his guilty plea on February 14, 1977. He thereafter was sentenced to 100 years in prison without parole on September 1, 1977. This sentence was

vacated by this Court on appeal by stipulation of counsel, and the cause remanded for resentencing on April 10, 1978. Six weeks later, on May 26, and before he had been resentenced, Huttinger filed his motion for withdrawal of plea.

This sequence indicates defendant's position here is stronger than that found to justify a claim of laches in Lewis. Cf. State v. Nance (1947), 120 Mont. 152, 184 P.2d 554 (one month between entry of guilty plea and motion to withdraw held not reasonably timely). In Lewis over one year elapsed between the date of sentencing and the date of the motion to withdraw plea, with no record of an intervening appeal to the Supreme Court. In the instant case, while eight and one-half months elapsed between the date of sentencing and the motion to withdraw, there also was the intervening appeal and reversal of the sentence. Huttinger promptly proceeded to make his motion to withdraw after the first sentence was vacated and before the new sentence was pronounced. Neither has the State presented any evidence that records are lost, evidence missing, or witnesses unavailable as was done in Sattler. In fact, part of the record on appeal are the police reports made during the investigation of the homicide.

"The generally accepted rule is that in order to receive favorable consideration an application to withdraw a plea of guilty should be made within a reasonable time." State v. Nance, 120 Mont. at 165, 184 P.2d at 561. Section 95-1902, R.C.M. 1947, now section 46-16-105(2) MCA, provides that withdrawal may be made "[a]t any time before or after judgment." In State v. McBane, 128 Mont. at 377, 275 P.2d at 222, Justice Freebourn specially concurred stating:

-12-

"Being guaranteed the right to a trial by jury, there is no sound reason, since the state gives up nothing, why a defendant charged with a felony should be denied the 'sacred' right to a trial by jury, where after plea of guilty but before the commencement of his sentence he demands such right."

Huttinger's motion, made before final sentencing and before he actually started serving his sentence, was timely.

Plea Bargaining. In exchange for Huttinger's plea of guilty to the charge of deliberate homicide, the Cascade County Attorney agreed to a dismissal of a charge of aggravated kidnapping although no written record of this plea bargain was made. This Court has stated many times that ". . . it will not lend its assistance to an accused criminal in escaping the obligations of his agreement after accepting the benefits thereof." State v. Sattler (1976), 170 Mont. 35, 37, 549 P.2d 1080, 1081. Accord, State v. Nance (1947), 120 Mont. at 166, 184 P.2d at 561.

This is undoubtedly the most troubling aspect of this appeal and is the factor weighing most strongly against allowing Huttinger to withdraw his guilty plea. We conclude, however, that it does not outweigh the other factors which favor allowing withdrawal.

This conclusion is based on several grounds. First, as noted earlier, immediately after entry of his guilty plea, Huttinger was sent to Warm Springs State Hospital for psychiatric evaluation and treatment. He remained at Warm Springs for over six months before being first sentenced. After sentencing, Huttinger was transferred to Warm Springs for further treatment. He is now in Warm Springs pending this appeal. In all, since July 1976 when he was first charged, Huttinger has spent nine months in the State Hospital and only six months in the State Prison. Therefore,

there is now, and there was at the time of his guilty plea, a serious question as to Huttinger's competency to enter into any plea bargain.

Second, at the hearing on the motion to withdraw his guilty plea, Huttinger and his (adoptive) parents both testified that the possibility of a defense based on mental disease or defect was not presented or discussed by either of his appointed counsel. While this testimony was contradicted by testimony from the attorneys involved, it does raise a question as to whether Huttinger was satisfied with the competency of his attorney. This goes to the issue of whether Huttinger was aware of all his options before entering into the plea bargain. As noted earlier, whether the defendant was satisfied with his attorney's competency is one of the areas that should be investigated by the District Court at the time it accepts a guilty plea. State v. Lewis, 582 P.2d at 352, 35 St.Rep. at 1097. This investigation was not undertaken by the District Court in this case.

Similarly, nowhere does it appear that Huttinger was advised of the fact that he could introduce evidence in mitigation of the deliberate homicide charge. He was not informed, in a sense, of all the elements of the plea bargaining arrangement. It is conceivable that had he known that the deliberate homicide charge, carrying a maximum term of 100 years or perhaps death, could have possibly been reduced by the introduction of mitigating circumstances to mitigated deliberate homicide carrying a maximum sentence of 40 years, Huttinger might have decided not to enter into the plea bargain. See, State v. Azure, supra.

We emphasize again that doubts in cases involving motions to withdraw a guilty plea should be resolved in favor of allowing withdrawal and a trial on the merits. Taking all the factors involved in this case and resolving doubts in favor of the defendant, we conclude that the District Court abused its discretion in refusing to allow Huttinger to withdraw his guilty plea.

The judgment of the District Court is reversed and the case is remanded for further proceedings consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice


_____


_____
Justices

-15-

Mr. Justice John Conway Harrison dissenting:

I respectfully dissent. As I view it, we have a factual situation that takes place over a two-year period, involving three defense attorneys and a trial judge making every effort to explain to the defendant his rights. Perhaps the golden words "Are you guilty of the murder of Mrs. _____ " were not specifically used, but the trial judge asked in the colloquy between the court, the defendant, and his attorney:

> "THE COURT: And it is of course understood at this point in time you wish to enter a change of plea in this case; is that correct?
>
> "MR. BARRON: Yes, your Honor. Mr. Huttinger would ask leave to withdraw his plea of Not Guilty to Deliberate Homicide.
>
> "THE COURT: You understand what a plea of guilty entails in this matter, do you not, Mr. Huttinger?
>
> "MR. HUTTINGER: Yes; I do.
>
> "THE COURT: You understand that change of plea, you waive your right to remain silent? You understand that?
>
> "MR. HUTTINGER: Yes.
>
> "THE COURT: You understand that you waive your right to counsel to represent you in this matter? You understand that?
>
> "MR. HUTTINGER: Yes.
>
> "THE COURT: You waive your right to a jury trial, you understand that?
>
> "MR. HUTTINGER: Yes.
>
> "THE COURT: You also understand that you waive your right to compel attendance of witnesses to appear and testify on your behalf; you understand that?
>
> "MR. HUTTINGER: Yes.
>
> "THE COURT: You understand the penalty for Deliberate Homicide in the State of Montana is imprisonment in the Montana State Prison, Deer Lodge, for a term not to exceed one hundred years; you understand that?
>
> "MR. HUTTINGER: Yes."

In withdrawing his plea of not guilty, I believe the only plea that can be considered under these circumstances is that he is entering a plea of guilty. He stated he understood waiving his rights and the sentence to be imposed and so the record indicates he understood the plea bargaining in dropping the aggravated kidnapping charge, which could have resulted in a death penalty if defendant had been convicted of both charges. Under these particular circumstances, I would affirm the judgment and sentence.

_John Conway Harrison_
Justice