No. 80-351

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

_____

STATE OF MONTANA,

              Plaintiff and Respondent,

   -vs-

AUGUST LEE WHITE,

              Defendant and Appellant.

_____

Appeal from: District Court of the Sixteenth Judicial District,
In and for the County of Custer, The Honorable
Alfred B. Coate, Judge presiding.

Counsel of Record:

    For Appellant:

        Leo J. Gallagher, Helena, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena,
        Montana
        Keith D. Haker, County Attorney, Miles City,
        Montana

_____

Submitted on Briefs: May 8, 1981

Decided: August 31, 1981

Filed: AUG 31 1981

Thomas J. Kearney
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Defendant appeals from an order of the Sixteenth Judicial District, Custer County. The order appealed from denies defendant's motion to withdraw his plea of guilty to the crime of deliberate homicide. On August 6, 1980, prior to the filing of the motion to withdraw, defendant was sentenced to 50 years in the Montana State Prison and designated a "dangerous offender." Defendant received an additional consecutive sentence of 10 years pursuant to section 46-18-221(1), MCA, for committing the crime with a knife.

It is undisputed that August Lee White, also known as "Dusty" White, stabbed to death his friend, Dallas Haley. At approximately 2:30 p.m., on January 29, 1980, August White, Dallas Haley, Joe Root and Rick Woods met at the Olive Hotel in Miles City, Montana. The purpose of the meeting was to allow White to purchase certain valuable coins from Dallas Haley. In fact, White planned to obtain the coins from Dallas Haley, not pay for them, and drop Haley off some place out of town, thus giving White a headstart to flee to Las Vegas, Nevada. Prior to picking up Haley, White had voluntarily consumed liquor and LSD. The group proceeded to the Twelve Mile Dam on the Tongue River south of Miles City. A short conversation occurred in which Dallas Haley was apprised of the fact that White was not going to pay for the coins and that the group was going to abandon Haley at the Twelve Mile Dam. Haley told White that he was going to report him to law enforcement officers in Miles City. White, who had been cleaning his fingernails with an open pocket knife, stabbed Haley twice in the left side, just below the shoulder, and once again in the back.

-2-

White and Joe Root dragged Haley's body to a hole in the ice of the Twelve Mile Dam and threw the body into the water. The body did not sink immediately so White and Root returned to shore and picked up rocks with which to sink the body. When they returned to the hole in the ice, the body had sunk.

August White, Joe Root and Rick Woods then returned to Miles City. White did not go to Las Vegas because Haley, who would have reported the theft of coins, was now dead.

White was arrested in Miles City in the early morning hours of January 30, 1980. He was arraigned in District Court on the charge of deliberate homicide on January 31, 1980. On April 3, 1980, White underwent a psychiatric evaluation which showed that he was competent to stand trial. On June 23, 1980, White requested that the Court allow him to change his plea from not guilty to guilty. The Court interrogated White extensively on the voluntariness of the plea, his understanding of the charge, the consequences of his plea, and the factual basis of his plea.

The issue on appeal is whether the District Court erred in denying defendant's motion to withdraw his guilty plea. We find no error.

Defendant's contentions are: (1) that his plea was not made by him intelligently and voluntarily, (2) that he was not adequately advised by his attorney prior to entering his guilty plea, (3) that there is no evidence that he understood the crime of deliberate homicide at the time of his guilty plea, (4) that he should be allowed to withdraw his guilty plea under the holdings in State v. Huttinger (1979), _____ Mont. ___, 595 P.2d 363, 36 St.Rep. 945; State v. Nelson (1979), ___ Mont. ____, 603 P.2d 1050, 36 St.Rep. 2228; and

State v. Azure (1977), 175 Mont. 189, 573 P.2d 179, and (5) that the District Court did not adequately ascertain the defendant's understanding of the charge against him before accepting his guilty plea.

Section 46-12-204(2), MCA, states:

"The court may refuse to accept a plea of guilty and shall not accept the plea of guilty without first determining that the plea is voluntary with an understanding of the charge."

Section 46-16-105(2), MCA, provides:

"At any time before or after judgment the court may, for good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted."

The standard for application of these statutes to White's motion to withdraw his guilty plea can be found in State v. Haynie (1980), ___ Mont. ___, 607 P.2d 1128, 1131, 37 St.Rep. 415, 419:

"A change of plea will be permitted only if it fairly appears the defendant was ignorant of his rights and the consequences of his act, or he was unduly and improperly influenced either by hope or by fear in making the plea, or if it appears the plea was entered under some mistake or misapprehension (citation omitted). Each case must be examined on its own record. The motion rests within the District Court's discretion, and the exercise of that discretion will not be disturbed absent an abuse of discretion (citation omitted)."

State v. Haynie, supra, is in agreement with Nelson, Huttinger, and Azure, upon which the defendant relies.

The record clearly reveals that White was neither ignorant of his rights nor of the consequences of pleading guilty to the crime of deliberate homicide. White had previously pled not guilty at the arraignment on January 31, 1980. He changed his plea to guilty at a hearing held on June 23, 1980. The district judge questioned the defendant extensively before accepting his plea of guilty. He also examined the defendant's attorney. The examination is too

-4-

lengthy to set out verbatim, however, it is important to note its breadth. It established the following facts:

1. Defendant was satisfied with the services of his attorney.

2. Defendant was not under the influence of drugs or alcohol at the time he changed his plea.

3. Defendant was not physically ill when he entered his plea.

4. Defendant had recently discussed the plea with his attorney.

5. Defendant knew that by pleading guilty he waived his rights to a trial (by jury or otherwise), to confront and cross-examine witnesses, and to remain silent.

6. Defendant's attorney felt there was no communication problem between himself and his client.

7. Defendant's attorney believed he had discussed with the defendant all of the constitutional rights to which the defendant was entitled and that the defendant understood those rights.

8. Defendant was aware that by pleading guilty to a felony he may be barred from certain occupations and professions.

9. Defendant knew that a plea of guilty is one of the strongest proofs known to criminal law.

10. Defendant knew that by pleading guilty, he waived any factual disputes.

11. Defendant was not changing his plea because of a promise or threat from a member of the law enforcement.

12. Defendant in fact believed he was guilty of the crime of deliberate homicide.

13. Defendant had not been promised that he would be sentenced to a particular period of time as a result of pleading guilty to deliberate homicide.

Before asking any questions, the district judge told the defendant that he may have as much time as necessary to answer and that he was free at any time to consult his attorney, who was present.

In addition, the following exchange occurred prior to the acceptance of the guilty plea:

> "THE COURT:  But there is a possibility that
> the jury could find that you're not guilty
> of the crime charged, but of some lesser included
> offense.  There is also a possibility that the
> jury could find that you were guilty of the crime
> charged.  The difference being, that if you were
> found guilty by the verdict of a jury for a lesser
> included offense, the punishment might be less
> than for deliberate homicide.  Now do you understand
> that?

> "THE DEFENDANT:  Yes sir."

Although the words "mitigated deliberate homicide" do not appear in the transcript of the hearing at which the defendant entered his plea, it is clear from the above-quoted language that the defendant knew that if he were to have a trial, he could be convicted of some lesser-included offense and possibly receive a lesser sentence.  Defendant chose not to take that chance.

Following the examination of the defendant, the district judge conducted an extensive discussion to determine a factual basis for acceptance of the guilty plea.

The District Court findings state:

> "V

> "That defendant was advised of the elements of
> deliberate homicide and of the lesser included
> offense of mitigated deliberate homicide by his
> counsel.

> "VI

> "That defendant was advised of the mental state
> required to commit the offense charged 'purposely
> or knowingly' by his counsel."

-6-

These findings are based on the testimony of the defendant's attorney. This Court is satisfied that there is sufficient evidence in the record to sustain the findings.

The state cites the recent case of McGuirk v. Fair (1st Cir. 1980), 622 F.2d 597, cert.den. ___ U.S. ___, 101 S.Ct. 233, ___ L.Ed.2d ___, in support of its position that trial counsel's advice to a defendant concerning a charge should be considered before allowing the defendant to withdraw his plea of guilty. If defendant's "'real notice' of the offense to which he pleaded" is the pivotal question in withdrawal of a guilty plea, as it appears to be in McGuirk and Henderson v. Morgan (1976), 426 U.S. 637, 96B S.Ct. 2253, 49 L.Ed.2d 108, then this Court must affirm the District Court's finding of real notice to the defendant. We hold that the combination of the district judge's examination of the defendant and the explanation by the defendant's attorney were sufficient to show that the defendant was informed of all that was required to make a voluntary and understanding plea of guilty to the crime of deliberate homicide.

Section 45-5-103(1), MCA, defines mitigated deliberate homicide as follows:

> "Criminal homicide constitutes mitigated deliberate homicide when a homicide which would otherwise be deliberate homicide is committed under the influence of extreme mental or emotional stress for which there is a reasonable explanation or excuse.. . ."

Thus, deliberate homicide and mitigated deliberated homicide require the same mental state: "purposely or knowingly." Section 45-5-102(1)(a), MCA. Further, section 45-2-203, MCA, provides:

> "A person who is in an intoxicated or drugged condition is criminally responsible for conduct unless such condition is involuntarily produced .. . . An intoxicated or drugged condition may be taken into consideration in determining the existence of a mental state which is an element of the offense."

These statutes indicate that the intoxicated or drugged condition of the defendant cannot be used to show "extreme mental or emotional stress," since an intoxicated or drugged condition does not remove criminal responsibility unless the requirements of section 45-2-203, MCA, are met. With regard to proving the requisite mental state, "purposely or knowingly," the defendant's own recitation of the facts surrounding the homicide at the time of entry of a guilty plea indicates a clear case of criminal responsibility. These facts plainly show he knew what he was doing in stabbing the victim repeatedly, dragging the body to a hole in the ice, planning to weight it down with rocks, and, after the crime, riding back to Miles City thinking his crime was secure because the body was hidden. Even if failure of the District Court specifically to discuss mitigated deliberate homicide was error, which we do not grant in this case, no withdrawal of his guilty plea could be allowed here because such error would not be prejudicial to the defendant under the circumstances of the homicide. Section 46-20-701, MCA.

The defendant relies most heavily upon State v. Azure (1977), 175 Mont. 189, 573 P.2d 179, stating that it requires that a defendant have a full understanding of the charge admitted by pleading guilty. We are satisfied that the present case meets the requirements of Azure and that the disparate outcomes of this case and Azure are mandated by the different circumstances of each case.

First, and most important, in Azure, there was substantial evidence of mitigating circumstances. The defendant in Azure, in addition to being under the influence of drugs and alcohol at the time he committed the crime, was said to have been emotionally depressed. 175 Mont. 189, 193, 573

-8-

P.2d 179, 181-182. There is no evidence of emotional stress in the present case. In Azure, we pointed out that if the case had gone to trial, the defendant would have been entitled to an instruction on the law of mitigated deliberate homicide. 175 Mont. 189, 194, 573 P.2d 179, 182. On the facts of the present case, had there been a trial, it would have been error for a trial judge to have presented an instruction on mitigated deliberate homicide to the jury.

Second, in Azure, the District Court order denying defendant's motion to withdraw his guilty plea was made by minute entry with no explanation for the ruling. There, we stated that "[a] District Court's failure to provide even a skeletal record of its reasoning in support of its ruling on such a motion may of itself call into question the soundness of the court's exercise of its discretion." Azure, 175 Mont. 189, 193, 573 P.2d 179, 182. In the present case, the District Court made extensive findings and conclusions in support of its denial of the defendant's motion to withdraw his plea of guilty. Upon reviewing these findings and conclusions, we hold that the District Court did not abuse its discretion.

Third, as discussed earlier, the record in this case demonstrates that the defendant was sufficiently informed to enter a plea that was "voluntary with an understanding of the charge." Section 46-12-204, MCA. The defendant in Azure was not so informed.

Having found no merit in defendant's contention, we affirm the District Court order denying the defendant's motion to withdraw his guilty plea.

_John G. Sheehy_
                Justice

-9-

We Concur:

_____
Chief Justice

_____

_____

_____
Justices