BUTLER, ET AL., APPELLANTS, *v.* PARADISE VALLEY IRR.
DISTRICT, RESPONDENTS.

No. 8550

Submitted June 1, 1945. Decided June 27, 1945.

160 Pac. (2d) 481

564

Mr. Harry L. Burns, of Chinook, for appellants.

Mr. E. J. McCabe, of Great Falls, for respondent.

MR. JUSTICE ANGSTMAN, delivered the opinion of the court.

This is an action to recover damages for flooding crops and land as a result of alleged negligence of defendant in operating and maintaining its canal. Defendant is alleged to be a corporation organized for the purpose of and actually engaged during the year 1943 in distributing water for irrigation purposes. The complaint charges that defendant carelessly released quantities of water into its canal in excess of its carrying capacity, causing it to flow over the banks of the canal onto plaintiffs' land and crops; that this was done with the knowledge of defendant and its directors who were notified thereof and refused to lower the water in the canal. The first cause of action is for damages in the sum of $1,984.80 caused to plaintiffs' crops, and the second cause of action seeks damages in the sum of $500 caused to plaintiffs' lands.

The answer admits the formal allegations of the complaint and denies the other allegations. It contains several separate defenses which may be summarized as follows: That the damage, if any, was caused, first, by plaintiffs themselves who, without consent of defendant, changed the adjustment and check-stop on the main canal of defendant in such manner as to prevent the free flow of water in the canal causing it to overflow; and that when the ditch rider of defendant proposed to change the check-stop plaintiffs told him they needed the water for their crops. Second, that without defendant's knowledge during the year 1943 moss had accumulated in the ditch reducing the water flow capacity and that defendant, by the exercise of ordinary care could not have discovered this fact, and plaintiffs had erected a barbed wire fence across the bottom of the canal on

which moss accumulated causing an artificial dam which retarded the flow of the water causing it to overflow to plaintiffs' land, all of which was unknown to defendant; that as soon as defendant learned that water was flowing over the banks of the canal it removed the fence and prevented the further overflow on that account. Third, that the Reclamation Service, without defendant's knowledge, discharged large quantities of water into Milk River from which the water enters the canal of defendant, thereby increasing the flow and pressure of the water and increasing the volume of water flowing into the canal; that as soon as defendant learned of the increased flow in Milk River it regulated the head-gate and thereby stopped the additional flow. Fourth, that the water of the canal would be lowered or raised and its volume increased or decreased accordingly, as the volume of water taken therefrom by users was increased or decreased; that during the times in question here persons using water failed to notify defendant of their cessation of use until the flooding occurred after which defendant immediately regulated the flow accordingly. Fifth, that during the times in question, upon information and belief, persons owning lands at points above and below plaintiffs' lands placed obstructions in the canal without its knowledge causing the water to overflow; that upon learning this defendant caused the obstructions to be removed. Sixth, that the flooding of plaintiffs' land was caused by one or all of the above circumstances either singly or collectively.

The reply was in effect a general denial of the affirmative allegations of the answer. The cause was tried to the court sitting with a jury. The jury returned a verdict in favor of defendant. Plaintiffs' motion for a new trial was denied. The appeal is from the judgment and error is predicated upon the court's refusal to grant a new trial.

Plaintiffs' first contention is that a new trial should be granted because the damages are inadequate. If we concede that this is a ground for new trial, though not specifically named in the statute (section 9397, Revised Codes), it would

not help plaintiffs in this case. It does not appear from the record that the jury ever reached the point in their deliberations where they found it necessary to measure the extent of the injury or damage to plaintiffs. The verdict was evidently based upon the question of liability. Liability in a case such as this depends upon negligence of the defendant. Billings Realty Co. v. Big Ditch Co., 43 Mont. 251, 115 Pac. 828; Fleming v. Lockwood, 36 Mont. 384, 92 Pac. 962, 14 L. R. A., N. S., 628, 122 Am. St. Rep. 375, 13 Ann. Cas. 263; Bray v. Cove Irr. Dist., 86 Mont. 562, 284 Pac. 539; Newman v. Bitter Root Irr. Dist., 95 Mont. 521, 28 Pac. (8d) 195. Having found for defendant, we must conclude that the jury found that the flooding of plaintiffs' land and crops was not due to any negligence on the part of defendant, but was due to one or more of the causes alleged in defendant's affirmative defenses. Our only province is to determine whether there is substantial evidence in the record justifying the jury in finding that there was no negligence on the part of defendant which proximately caused the damage to plaintiffs. We find substantial credible evidence in the record to sustain a verdict for defendant.

Plaintiffs introduced proof tending to show that more water ▆ was permitted by defendant to flow into the canal than it would hold without overflowing; that this continued practically without interruption for the period from about July 21, 1943 to August 26th and that defendant and its commissioners knew that the overflow from the canal was flooding plaintiffs' lands and crops.

On the contrary, defendant submitted evidence tending to show that there were four different times when the canal overflowed and that defendant stopped the overflow each time as soon as it learned of the fact. Defendant also submitted evidence that the canal had a carrying capacity of 120 cubic feet per second and that the most that was turned into it during the period in question was about 80 cubic feet per second; that defendant never released an excessive amount of water into the canal; that the overflow was caused by obstructions in the canal,

some of it being caused by a fence maintained by plaintiffs across and near the bottom of the canal on which moss and other material had accumulated preventing the free flow of the water; that water users failed to notify the ditch rider when they ceased to use water contrary to instructions given to them, thus increasing the flow without the knowledge of defendant; that someone tampered with the check-stop on different occasions and in so doing caused the level of the water to be raised so that it overflowed; defendant's ditch rider called Butler's attention to it on one occasion, and Butler said he would have to keep the check as high as possible in order to get water. Whenever it was learned that plaintiffs' lands were being flooded defendant took steps to remedy the situation. Defendant showed that in 1943 the water used in the canal was known as "clear water" which caused moss to grow in the main canal retarding the flow of the water; that defendant had had no previous experience with clear water and did not know that moss would accumulate therein, until operating a drag line in September when the discovery was made.

The evidence submitted by defendant was sufficient to warrant the jury in finding that defendant was not guilty of negligence in operating and maintaining its distributing system. Defendant submitted proof which justified a finding that it used reasonable care in endeavoring to prevent the flooding of plaintiffs' lands. In order to reduce the volume of water in the canal, the commissioners adopted a system of rotating in the use of water so that only one-half of the users would be using the water at any given time. There was proof also that plaintiff Butler himself made a statement to Commissioner Overcast that the water users were as much to blame for the flooding as the commissioners.

The problem of reconciling the conflicts in the evidence was one for the jury and finding, as we do, that there is substantial evidence in the record supporting one or more of the affirmative defenses and justifying the jury in finding that defendant was free from negligence, which proximately caused the

damage complained of, we are not at liberty to interfere with the jury's verdict.

Plaintiffs contend that their motion for new trial should have been granted upon the ground of newly discovered evidence. It is shown by affidavits that the witnesses whose evidence is used as the basis for a new trial were interviewed before the trial by counsel for plaintiffs and expressed themselves as desirous of taking no part in the case as witnesses for either side and refused to disclose to counsel for plaintiffs what they knew about the case. After the trial one of the new witnesses talked to a juror and divulged the facts concerning what he knew about the case and which are now counted on by plaintiffs.

The new witnesses relied upon are P. C. Overcast, his wife and two sons, who live in the Paradise Valley. P. C. Overcast is a brother of plaintiff Bessie Butler. Plaintiff Bessie Butler made no affidavit showing that she used any diligence in endeavoring to persuade the witnesses to tell what they knew about the case in advance of the trial. Plaintiff P. O. Butler made affidavit that he interviewed P. C. Overcast and Nora E. Overcast before the trial and that they informed him "they knew nothing pertinent to the issue to be tried" and "that in any event they did not desire to testify in the action nor to take one side nor the other." The trial court was warranted in finding that there was not a sufficient showing of diligence on behalf of plaintiffs in attempting to secure the evidence of these witnesses, related as they were to plaintiff Bessie Butler, before the trial.

Also the matter of granting or refusing a new trial upon the ground of newly discovered evidence rests largely in the discretion of the trial court. Gould v. Lynn, 88 Mont. 501, 293 Pac. 968. Motions on this ground are not looked upon with favor but with distrust. In re Colbert's Estate, on rehearing, 31 Mont. 474, 80 Pac. 248, 107 Am. St. Rep. 439, 3 Ann. Cas. 952; 39 Am. Jur. "New Trial," sec. 156. The trial judge who has heard all of the evidence in the case and who has observed the conduct and demeanor of the witnesses is in a much better position than

are we to weigh the evidence and to consider whether the newly discovered evidence is such as would be likely to produce a different result upon a retrial. It is presumed that the trial court considered these conditions in passing upon the motion. In re Colbert's Estate, supra.

We cannot say that the court abused its discretion in denying the motion on this ground, particularly since most of the new evidence is flatly denied by counter-affidavits filed by defendant.

The judgment is affirmed.

Mr. Chief Justice Johnson, and Associate Justices Adair and Cheadle, concur.

Mr. Justice Morris:

I dissent. The clear conflict in the evidence is such that when combined with the affidavits filed in support of the motion for a new trial convinces me the new trial should have been granted.