THE STATE OF MONTANA, PLAINTIFF AND RESPONDENT, *v.*
FRANK D. LEWIS, DEFENDANT AND APPELLANT.

No. 14078.
Submitted June 6, 1978.
Decided July 31, 1978.
582 P.2d 346.

Peterson & Hunt, Billings, Kenneth D. Peterson, argued, Billings, for defendant and appellant.

Mike Greely, Atty. Gen., Helena, Sheri K. Sprigg, Asst. Atty. Gen., argued, Helena, James J. Masar, argued, County Atty., Deer Lodge, for plaintiff and respondent.

MR. JUSTICE SHEEHY delivered the opinion of the Court.

This is an appeal by defendant-appellant, Frank D. Lewis, from adverse rulings by the District Court of the Third Judicial District, Powell County, denying his motion for a new trial in one cause, and his motion to withdraw his plea of guilty in another cause. The cases have been consolidated for appeal.

Here are the facts with respect to each cause:

*Cause No. 2023*

Defendant was superintendent of schools in School District No. 1, Deer Lodge, from 1964 to April 1970. On December 22, 1970, an information was filed in Cause No. 2023, in the District Court, charging defendant with 32 counts of embezzlement by a public officer under former section 94-1501, R.C.M.1947, relating to certain checks written by the defendant while he was superintendent on an activity fund bank account, the property of the school district.

Because of a statute of limitations all but seven counts of the information were dismissed and trial with a jury was had on those seven counts. Defendant was convicted on three counts, relating to checks written by him on the school district activity fund. After denial of motions for judgment notwithstanding the verdict and for a new trial, the District Court, Honorable Nat Allen, District Judge presiding, sentenced defendant to one year in prison on each count, with the sentences suspended.

Defendant appealed his judgment of conviction on the three count raising three issues on appeal; one, that the evidence was insufficient to sustain his conviction; two, that he did not have the requisite intent to commit the crime of embezzlement by a public officer; and three, the District Court abused its discretion when it

refused to grant the defendant a change of place of trial. This Court considered those issues, found no merit in the same and affirmed the judgment of conviction. *State v. Lewis* (1976), 169 Mont. 290, 546 P.2d 518.

On August 11, 1977, the defendant filed a petition in Cause No. 2023 in the District Court to vacate and set aside the judgment against him, apparently proceeding under the authority of section 95-2601, R.C.M.1947, relating to post-conviction relief. The petition was grounded on allegations that the defendant had been denied due process of law in that newly discovered evidence contained in the minutes of the school board of trustees which were not produced at the trial; the minutes did not become available and were not discovered by him until after the trial and appeal were completed; and that because thereof defendant has been denied due process of law. Attached to the petition are copies of special meetings of the school board dated March 7, 1966, March 31, 1966, April 11, 1966, and of a regular monthly meeting dated March 14, 1966. There were further attached additional monthly or special meetings' minutes of various dates and a copy of a deposition of one William King, taken in proceedings before the United States Tax Court, wherein Frank D. Lewis was the taxpayer-petitioner. (This is presumably the Internal Revenue Service proceedings where defendant claims he was exonerated of liability for income taxes). The District Court, having considered the petition and the supporting material on October 13, 1977, denied the petition to vacate or set aside the judgment of conviction. Appeal is taken from that denial.

*Cause No. 2024*

On December 31, 1970, information was filed in Cause No. 2024 against the defendant Frank D. Lewis charging him with 25 counts of forgery under former section 94-2001, R.C.M.1947. Defendant entered his plea of not guilty to these counts. However, on June 4, 1971, he appeared before the District Court, again with District Judge Nat Allen presiding and informed the Court that he wished to change his plea to guilty. Before accepting the change of plea,

the District Judge stated he wanted to examine the defendant and thereupon examined him closely and at length with his counsel present, covering the following subjects: (1) defendant had previously pleaded not guilty but now wanted to change his plea; (2) his true name was Frank D. Lewis; (3) he was not suffering from any physical or mental disability; (4) he was not an alcoholic, had nothing to drink that day, had never taken drugs, and was not then under the influence of drugs; (5) he understood the questions that were being asked of him and he understood his right to remain silent during those proceedings and; (6) before a plea of guilty would be accepted, the Court wanted to know that there was a factual basis upon which the plea of guilty would be entered. The Court specifically asked him about the charges in Counts 7, 6, 2, and 4, and with respect to each, examined the exhibits and obtained from defendant the admission that he had forged those instruments; likewise, with respect to each of the other 25 counts and each instrument there involved, his responses would be the same; he had received a copy of the information and had gone over it; was advised of the minimum punishment of one year and the maximum punishment of 14 years and realized he had further time to plead if he desired it; wished to plead immediately and fully understood the charges.

Thereafter the defendant specifically pleaded guilty to Counts 1 and 2, and then generally pleaded guilty to every other count, and stated to the Court that he did not want to plead not guilty to any of those counts, even though he understood he had that right. The Court then went into the question of whether or not his wish to change his plea was voluntary and determined from defendant that he entered his plea of guilty because he was in fact guilty of the crimes charged; knew he was entitled to a trial by jury; knew by pleading guilty he would not be entitled to confront the witnesses; had not received any promises as to what the Court would do if his plea of guilty were accepted. He admitted that in his presence, his counsel and the Court had discussed plea bargaining and the Court had stated to him that it would impose a certain sentence if a guilty

plea were entered, but the defendant stated that such statement by the Court was not what made him plead guilty; he had not been threatened by any peace officer, county attorney or other person nor induced by them to plead guilty and had not received any promise of leniency other than what he had heard from the District Judge. He also stated he had ample time to discuss the case with his attorney, was entirely satisfied with the services of his attorney and throught his attorney was competent.

Defendant stated he had no accomplices with respect to the charges, the county attorney had not suppressed any evidence of his innocence that he knew of, no misrepresentations had been made to him in order to get him to plead guilty, nobody had lied to him to get him to plead guilty and that he had not been interrogated with respect to the charges by the arresting officers. Finally, upon one further assurance from the defendant that he felt he was absolutely guilty of the crimes charged against him, the Court accepted his plea of guilty.

Thereafter, the District Court entered judgment of conviction on his plea of guilty and sentenced him to imprisonment for a term of five years with the provision that four years and 11 months of the term be suspended and that defendant comply with certain parole provisions. Sentence was imposed on June 4, 1971.

On July 10, 1972, defendant, with new counsel, filed a motion to withdraw his plea of guilty to the 25 counts, stating (1) defendant was persuaded, upon misinformation and misunderstanding, to plead guilty although he was not guilty; (2) defendant's former attorney had failed to interview the State's witnesses or conduct any investigation yet informed the defendant that the State's evidence was not subject to successful dispute and the consequences would be extremely severe unless the defendant entered a plea of guilty; (3) that defendant had entered his plea of guilty out of fear; and (4) that defendant had told his attorney he was not guilty, and had told the Court he had not received any of the money referred to in the information, and had not been properly advised.

On March 26, 1974, the District Court entered an order granting

defendant's motion to withdraw the plea of guilty except as to Counts 1, 2, 3, and 4. That order also confirmed the sentence previously imposed, to apply to Counts 1, 2, 3, and 4.

On October 12, 1976, an order was filed discharging the defendant from probation. On August 11, 1977, the defendant filed his motion for an order authorizing withdrawal of his guilty plea to Counts 1, 2, 3 and 4. The grounds of his newest motion were that he had entered his plea of guilty to all 25 counts on the advice of his then counsel; his then counsel had put extreme pressure on him and on his wife to get him to plead guilty to the charges; he had pleaded guilty because of the extreme coercion by his counsel although he was innocent and had been innocent all along; his counsel had advised him if evidence was available at a later date he could always withdraw his plea of guilty and present the evidence in trial; subsequent to the guilty plea he had been investigated by the Postal Department of the United States and by the Internal Revenue Service and each of these agencies had exonerated him in their investigations. He also referred to the deposition taken in the Internal Revenue Service proceedings of a William King, in Tennessee, said King being the owner of a firm "KINCO", that was connected with the alleged forged instruments. Defendant claims in the deposition William King had exonerated the defendant.

Again the District Court, this time with Honorable Robert J. Boyd presiding, denied the motion on October 19, 1977, and from denial of motion, the defendant appeals.

No appeal had been taken by defendant from the order allowing him to withdraw his guilty plea to all counts except 1, 2, 3, and 4.

*Determination as to Cause No. 2023*

The principal issue under this phase of the appeal is whether the newly discovered evidence claimed by the defendant requires an order setting aside the judgment of conviction founded on jury verdicts and the granting of a new trial to the defendant, Lewis. In this connection, Lewis contends that he has found minutes of special and regular meetings of the school board which were not available to him at the time of his trial; that he has also found a "red note-

book" in which he kept personal notes with respect to the proceedings before the school board, which notebook was not available to him at the time of his trial; and in the light of this new evidence to deny him a new trial is to deny him due process and equal protection of the law.

The State contends in essence with respect to this phase of the appeal the newly discovered evidence, even if considered material, would not compel a different result before a new jury; the trial court did not abuse its discretion in refusing a new trial; and in any event the motion of the defendant, Lewis, is governed by the rules laid down in *State v. Greeno* (1959), 135 Mont. 580, 342 P.2d 1052.

It is true that the holding *State v. Greeno*, supra, does govern in Montana in cases where new trials are petitioned for on the ground of newly discovered evidence. Of the several requisites set down by that case which the movant for a new trial must meet, we find here defendant Lewis fails in at least three of those requisites: (1) the newly discovered evidence is not so material that it would probably produce a different result upon another trial; (2) it is not shown the movant was diligent in not discovering the evidence at or prior to his trial; and (3) newly discovered evidence appears to be merely cumulative.

Lewis set out in his Affidavit filed with the District Court, in support of his motion for new trial, the following items: The minutes of July 7, 1964 would reveal that when Lewis took over as Superintendent there was a surplus of $8,000 in the budget. The minutes of April 12, 1966 would show that the County Superintendent had written a letter to the Board extremely critical of the accounting and checkwriting in School District No. 1, and the School Board was aware of the accounting and checkwriting procedure and supported it; the minutes of May 9, 1966 were revealed and the Board gave the Superintendent a large increase in pay and was not displeased with the services. The Board minutes of September 13, 1965 would show that the invoices should be attached to the claim blanks wherever possible and the Board used that same policy until

September 13, 1965. Under the September 13, 1965 policy, the School Board allowed one claim blank to be used for several invoices and checks but this policy was changed in 1968 so only one claim blank could be used per invoice; the minutes of October 12, 1964 and December 10, 1964 which showed the Board was very conscious of the bill and closely inspected the same; and in conclusion the defendant argues that the introduction of these minutes and sample claim blanks would make a difference to the jury and the verdict in this case.

Lewis also claims in his Affidavit that he kept a red minutebook thought to have been destroyed or lost, and which was not obtained until after the appeal was adverse to the movant.

If we accept all those claims at face value, it still does not appear the jury would reach a different result with respect to his conviction. The minutes do not show the specific claims upon which Lewis was convicted had, in fact, been approved or inspected by the school board. No real effort is made in the affidavit or otherwise to account for the absence of the missing minutes of the school board, or the absence and subsequent finding of the red notebook. In fact the District Court, in denying the motion for a new trial, noted that nothing appeared from the record that Lewis made any effort to subpoena the records of the minutes of the school board at anytime either before or during the trial. Due diligence in securing such evidence and preparing for trial has not been shown by Lewis. In fact, on March 23, 1972, his counsel wrote him a letter stating if need be they could go through the school records to try to find information which would be helpful to his cause.

We have ourselves examined the minutes which the defendant has produced and which he claims entitle him to a new trial, and find there is nothing in those minutes which specifically refer to the counts upon which the defendant is convicted. We can only conclude such evidence would merely be cumulative. We do not find such evidence would bring about a different result if the defendant were retried. See *Roberts et al. v. Oechsli et al.* (1918), 54 Mont.

589, 172 P. 1037; *Ebaugh v. Burns* (1922), 65 Mont. 15, 210 P. 892; *Kartes v. Kartes* (1977), 175 Mont. 210, 573 P.2d 191.

■ Moreover, the matter of granting or refusing a new trial for newly discovered evidence rests largely in the discretion of the District Court, *Butler v. Paradise Valley Irr. District* (1945), 117 Mont. 563, 160 P.2d 481. It does not appear to us that the District Court in any way abused its discretion here.

Accordingly, we affirm the order of the District Court denying a new trial as to Cause no. 2023.

*Determination as to Cause No. 2024*

In this cause, as to Counts no. 1, 2, 3 and 4 of the information, the guilty plea of defendant remains. As to those, defendant claims he entered his plea of guilty upon the representations of his then attorney that he had no chance in trial, his punishment would be severe and it was not possible to get a deposition of William King outside of the State of Montana. Defendant claims there was no attempt to obtain depositions, although later the Internal Revenue Service obtained a deposition of King. He claims William King's deposition exonerates him and he was exonerated by the Postal Service and Internal Revenue Service. Based on these claims, defendant wants to "withdraw his guilty pleas and proceed to trial."

The State counters, with respect to this argument, that the matter of withdrawal of the plea of guilty and a subsequent plea of not guilty rests in the discretion of the trial court and here the trial court did not abuse its discretion in denying the same; and because of the lapse of time involved, his motion to withdraw his plea is now barred by laches.

■ Each of the contentions raised by the State has great merit. There is no set rule or standard which can be relied on in any given case where a motion is made to withdraw a guilty plea. *State v. Morgan* (1957), 131 Mont. 58, 307 P.2d 244. For that reason we must rely to a great extent on the discretion of the trial court. That discretion is subject to review only upon the showing of an abuse of discretion. *State v. Doty* (1977), 173 Mont. 233, 566 P.2d 1388,

1390. Here we do not find any abuse of discretion on the part of the trial court.

Moreover, the claim of laches is good against the defendant here because it is quite probable the records upon which the pleas of guilty were entered are now missing or their whereabouts unknown and the availability of witnesses would of course be a question. See *State v. Sattler* (1976), 170 Mont. 35, 549 P.2d 1080.

There is however another stronger reason upon which we rely to determine here that defendant, Lewis, is not entitled to withdraw his plea of guilty to Counts 1, 2, 3 and 4 in this case. At the time he appeared before the District Court in order to change his plea from not guilty to guilty and at a time when he was represented by his own private counsel, the District Court went to great pains to determine the defendant knew what he was doing and his plea of guilty was being voluntarily offered. Judge Allen made a thorough interrogation of the defendant at that time. The District Court ascertained particularly that the defendant was satisfied with his counsel, and he thought his counsel was competent. If we were now to agree, upon the mere representations of the defendant at this stage, and this late in the game, that he had been coerced by his counsel to enter the guilty pleas, and all of the responses made by him to the interrogation of Judge Allen were false, we would in effect be permitting some kind of fraud to be perpetrated either upon the District Court or this Court. We are not dealing in this instance with an uneducated man, innocent of the ways of the business world.

Where a District Court has done all that it can to determine, from the defendant or otherwise, that the proposed plea of guilty is voluntarily made, the defendant understands what he is doing and is advised of the consequences of his plea, including the nature and extent of his punishment, has been adequately advised by counsel, and has been treated fairly at all stages of the prosecution against him, and that in fact the defendant states he is guilty of the charges made, then this Court has a duty to support the District Court when it allows a plea of guilty to be entered in place of a plea of not guilty.

■ We hold that when in the sentencing procedure, the District Court carefully, as here, examines the defendant, finds him to be competent, and determines from him that his plea of guilty is voluntary, he understands the charge and his possible punishment, he is not acting under the influence of drugs or alcohol, he admits his counsel is competent and he has been well advised, and he declares in open court the facts upon which his guilt is based, then a plea of guilty accepted by the District Court on the basis of that examination will be upheld; and a motion later made by the defendant, as here, to gainsay in effect what the defendant earlier represented to the District Court, apparently to receive a lighter sentence, can not be given any degree of credence.

■ It has become common place in recent times for defendants seeking post conviction relief to assail their representation by counsel during the criminal proceedings as inadequate or deficient. Such an attack however must be grounded upon facts which appear in or are easily deduced from the record and which go beyond the mere conclusory allegations in the defendant's affidavit. There must be a showing of actual ineffectiveness on the part of the counsel. *Digiallonardo v. Betzer* (1973), 163 Mont. 104, 515 P.2d 705.

Nor do we agree with the contention of the defendant that he has been "exonerated" by the Postal Department and by the Internal Revenue Service of the United States Government. Nothing beyond the defendant's affidavit has been presented with respect to the Postal Service investigation of the defendant.

As to the Internal Revenue Service, we find only a copy of a deposition taken in a proceeding before the United States Tax Court where Frank D. Lewis was petitioner and Commission of Internal Revenue was respondent. The deposition was taken on August 30, 1976 in Memphis, Tennessee. In the deposition, deponent denied having any information or knowledge that would involve defendant in the matters which were apparently the source of the charges against him. However, the whole examination of deponent gives one the impression of a very evasive witness with a vague memory and it is as likely that the Internal Revenue Service proceedings

were dropped because of lack of sufficient evidence as because of any "exoneration" of defendant. If anything, deposition is adverse to defendant, because it seems incredible any person with experience and education would get involved in business with William King. He operated with only a telephone and a mailing address, using the firm name "KINCO", and he took orders for any kind of merchandise. He filled each order by going out on the market to purchase the items, after which he added his profit and a "premium" for the purchaser and billed accordingly. The premium consisted of goods or cash. Whether in the long run he actually shipped the items ordered is open to conjecture. No matter, his customers were on the hook. He disclosed his *modus operandi* to his interrogator when in a revealing passage, he testified:

"Q. Everybody is on the take. A. Yes.

"Q. As I understand it, this business dealings with the schools and school districts was much like you characterized politicians, being on the take, and these people? A. There ain't no proof on that.

"Q. I understand. You characterized it. You don't have any proof. Each of these schools wants to receive something in order for you to get their sale? There was a little give and take? A. In other words, I made them that way.

"Q. That is how you made the sales? A. That is a salesman's gimmick. Do you know any Jewish words?

"Q. Yes. A. I made goniffi out of them, a thief, that's right."

A motion to withdraw a plea of guilty and to substitute therefore a plea of not guilty is addressed to the sound discretion of the District Court. *State ex rel. Foot v. District Court* (1928), 81 Mont. 495, 503, 263 P.2d 979. We find no abuse of discretion on the part of the District Court in refusing to allow defendant to withdraw his plea of guilty.

Accordingly, with respect to both Causes 2023 and 2024 in the District Court, the orders of the District Court denying defendant's motions are affirmed.

MR. JUSTICES HARRISON and SHEA concur.

MR. CHIEF JUSTICE HASWELL, deeming himself disqualified, did not participate in this case.