Lawrence LaVern SOBER, Petitioner,

v.

Roger W. CRIST, Warden, Montana State Prison, and Michael T. Greely, Attorney General, State of Montana, Respondents.

No. CV–79–13–BLG.

United States District Court,
D. Montana,
Billings Division.

June 28, 1982.

Gene R. Jarussi, Keefer, Roybal, Hanson, Stacey & Jarussi, Billings, Mont., for petitioner.

Charles A. Bradley, Chief Deputy County Atty., Yellowstone County, Billings, Mont., for respondents.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BATTIN, Chief Judge.

### PROCEDURAL BACKGROUND

Petitioner previously initiated this habeas corpus action under 28 U.S.C. § 2254, attacking the validity of a September 1977 Montana district court conviction upon his plea of guilty, for attempted sexual intercourse without consent, in violation of R.C.M.1947, § 94–5–503, presently codified at MCA § 45–5–503 (1981). On June 22, 1979, this Court granted respondents' motion for summary judgment, thereby denying the relief sought by petitioner. On appeal, the Ninth Circuit remanded the case to allow this Court to conduct an evidentiary hearing on two issues raised by petitioner: (1) lack of a voluntary and intelligent entry of a guilty plea, and (2) ineffective assistance of counsel. *See Sober v. Crist,* 644 F.2d 807 (9th Cir.1981). The Court has conducted an evidentiary hearing on these issues and from an exhaustive review of the testimony and evidence presented, makes the follow-

ing Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. On June 16, 1977, petitioner was initially questioned by Billings Police Department officers concerning the sexual assault of his neighbor, Mrs. Michelle Sullivan. During the questioning, police officers noted a strong odor of intoxicants while speaking with petitioner. Petitioner voluntarily went to the Billings police station and offered a statement to the officers in charge of the investigation. At that time, petitioner was fully and properly advised of his *Miranda* rights. Petitioner denied any personal involvement in his neighbor's assault but admitted a previous Colorado conviction for assault.

2. On June 22, 1977, Sober consented to further questioning by police concerning the assault, and ultimately admitted by confession that he was the victim's attacker but denied any sexual motives. Petitioner was then arrested for sexual assault and formally charged with attempted sexual intercourse without consent.

#### Motion to Suppress—Involuntary Confession

3. Petitioner initially alleged that before confessing to the incident, he was not fully readvised of his *Miranda* rights other than a remark by an Officer Fox that he could have an attorney. Petitioner further alleges that his confession was coerced by the officers during the interrogation on June 22, 1977. Detective Fox stated in his police report that "I finally, after convincing him that we would no doubt arrest him, within the week on a warrant, he finally admitted that he did attempt to rape the victim. He was advised of his rights, prior to being questioned, and also advised of his rights before I took the statement." Petitioner's claim that his confession was coerced was implicitly waived by his own testimony at the evidentiary hearing. On direct examination petitioner was asked the following by his appointed counsel: .

*Mr. Jarussi*: Before the statement of confession, do you recall whether Officer Fox indicated something like that you might as well give a statement because you would be arrested anyway even if you didn't?

*Sober*: I don't remember that.

Petitioner confessed approximately 45 minutes after the alleged overreaching by police. Even assuming the officer's comments were threatening or psychologically coercive, from the facts elicited there is no evidence that petitioner's choice was influenced or his will overcome by the officer's statement.

4. John L. Adams, a Billings attorney, was appointed to represent petitioner in state court. On June 29, 1977, Mr. Adams moved the court for a psychiatric evaluation of petitioner and the motion was granted. Upon completion of the mental evaluation, Adams met with Sober to discuss the status of the case and Sober initially pled not guilty to the charges on August 15, 1977.

5. Subsequent to the initial plea, Adams met with petitioner on at least four occasions: August 5, 17, and 31, and September 9, 1977. At these conferences, Adams and Sober discussed the facts and events concerning the charges against petitioner. Adams advised Sober of the prosecution's position and attitude in the case and how the jury would probably view the evidence. Adams also discussed intoxication as a possible defense, but did not consider or discuss abandonment as a valid defense. Adams ultimately determined that the facts of the case negated intoxication as a strong defense and advised Sober that the defense would probably be rejected by a jury. Adams and Sober discussed four offenses: (a) Burglary; (b) sexual intercourse without consent; (c) felony sexual assault; (d) misdemeanor sexual assault. Although admitting that he did not discuss each element of all the lesser included offenses, Adams contends petitioner understood the elements in relation to the possibility of lesser penalties. Adams also recalled that he informed Sober of his attempts to get the charges reduced to a lesser included offense.

6. Petitioner contradicted Adams' testimony by contending primarily that he did not understand the elements of the charge against him and that he was not aware of the possible defenses available to him. Much of petitioner's testimony was derived from or aided by a "log" or summary he kept in jail during June-September of 1977. At the evidentiary hearing conducted by the Court, numerous contradictions arose between the testimony of petitioner and his appointed counsel concerning the sequence of events during this time.

7. Sober denies that he received any explanation concerning (a) the elements of attempted sexual intercourse without consent; (b) any possible defenses; or (c) the required mental state for commission of the offense. Petitioner also alleges that he sent his attorney a letter of September 2, 1977, requesting that Adams pursue a motion to suppress concerning his confession made on June 27, 1977. Adams denied that he received the request and testified that at a September 9, 1977, conference, petitioner did not mention the motion to suppress. Adams indicated that Sober would be required to testify if the intoxication or abandonment defenses were pursued and in his opinion this would open the door for impeachment by petitioner's confession. He further testified he informed petitioner that even if suppressed as illegally obtained the confession could be used for such impeachment purposes. *See e.g., United States v. Whitson,* 587 F.2d 948, 954–55 (9th Cir.1978).

8. The Court finds petitioner's claims surrounding the motion to suppress highly improbable. Testimony at the hearing suggested petitioner was somewhat encouraged to pursue suppression of his allegedly coerced confession by inmates in the county jail. However, he never discussed the possibility of pursuing the motion with his attorney. Moreover, petitioner was specifically questioned at the hearing as to the facts surrounding his coerced confession and he expressly denied any recollection of the alleged coercive interrogation by Officer Fox. It is difficult to accept this portion of Sober's testimony as credible. The motion to suppress appears to be a major component of his ineffective representation claim and apparently occupied a major portion of his diary, yet petitioner cannot recall the crucial events that would form the basis for possible suppression and support the claims made against his attorney. This belies the conclusion that the threat of arrest was the catalyst in securing petitioner's confession.

9. The testimony of the interrogating officers rebutted petitioner's contentions that he was somewhat confused and unclear about the charges against him. The officers testified that the possibility of a misdemeanor charge was never mentioned to petitioner; rather, felony assault was initially contemplated as a charge. Further, petitioner was required to sign a fingerprint card which listed the offense as sexual intercourse without consent.

10. Sober also believed he had valid intoxication and abandonment defenses. However, on cross-examination, petitioner later testified that he did not believe intoxication was a defense, explaining that he really wasn't sure of his intent at the time of the offense; further, petitioner described himself as a "heavy drinker" yet revealed at the hearing that he did not believe he drank heavily on the night of the assault. R.C.M.1947, § 94–2–109, provides:

> A person who is in an intoxicated or drugged condition is criminally responsible for conduct unless such condition is involuntarily produced and deprives him of his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. An intoxicated or drugged condition may be taken into consideration in determining the existence of a mental state which is an element of the offense.

The Court finds that petitioner's admission, together with the evidence evaluated in its entirety could not have supported an intoxication defense.

11. Petitioner also believed he could maintain an abandonment defense in his case. However, the undisputed facts concerning petitioner's conduct on the night of

the assault reveals he did not voluntarily terminate his advances; rather, he fled from his victim when she began resisting his advances. The attempt statute in effect in 1977 required a voluntary and complete renunciation of criminal purpose before a valid abandonment defense could be asserted. R.C.M.1947, § 94–4–103(4). Therefore, Sober's conduct was clearly not the product of a voluntary withdrawal and we find no merit in petitioner's abandonment contentions.

12. Sober's conspicuous failure to advise his attorney of his extensive criminal record, and in particular of a previous arrest for attempted sexual intercourse without consent in Colorado, cannot be ignored. Subsequent to a mistrial from a deadlocked jury in the Colorado case, petitioner pled guilty to a lesser included offense of assault. We believe petitioner's innuendo that he was totally unfamiliar with and confused about the plea process and the possibility of lesser included offenses pales in light of this crucial but undisclosed fact. The prior Colorado conviction supports the inference that petitioner possessed at least some independent knowledge of lesser included offenses and some appreciation for the nature of the charges against him. The Court believes petitioner knew more about the criminal process than he admitted. *See, e.g., Whitney v. Craven,* 460 F.2d 1267 (9th Cir.1972), *cert. denied,* 409 U.S. 1061, 93 S.Ct. 563, 34 L.Ed.2d 514 (1972). It is apparent that Sober was not totally unfamiliar with the charges against him, the concept of lesser included offenses, nor of the plea process in general.

### Involuntary Plea

13. Adams further testified that he informed the petitioner of his right to a jury trial, right to confront and cross-examine witnesses; Adams also recalled that he discussed the sentencing alternatives available if petitioner chose to plead guilty to the charge. Adams determined that in his estimation a deferred or suspended sentence was unlikely and advised Sober that the average sentence for similar offenses was fifteen years. Petitioner admitted that he was also correctly informed by Adams that the maximum would be forty years for his offense and that the county attorney would probably ask for a maximum sentence if petitioner was convicted by a jury.

14. Petitioner apparently believes he was only vaguely aware of the nature and extent of the charges against him. Near the conclusion of his testimony at the evidentiary hearing, the petitioner was questioned as follows:

MR. JARUSSI: Did you have trouble understanding what was going on in your case?

SOBER: At that time, yes, because I, you know—the thing I kept thinking, I was in a different state of mind then. I felt like I was—I felt like I was—I had gone crazy or something, and so to compare then and now is really kind of hard for me to do.

Petitioner's extensive criminal record together with the conclusion reached in the mental evaluation report rebuts this assertion. The report determined that:

. . . His state of mind at the time of his offense would not interfere with his ability to appreciate the criminality of his conduct nor abrogate his responsibility and he should therefore stand accountable.

The Court accordingly finds petitioner did in fact understand and appreciate the reasons for and the implications of the proceedings against him. It is also apparent that petitioner was adequately advised of the contingencies and inherent risk of a jury trial and of the possible consequences of the change of plea to guilty.

15. The evidence before the Court is replete with suspiciously convenient lapses of memory by petitioner concerning facts essential to his various assertions. Upon close examination, the crucial conflicts and contradictions in his testimony militate against his veracity and credibility. Conversely, the testimony of his appointed counsel and the Billings police officers involved in the case is much more consistent and credible. Although appointed counsel did not explain

each element of the charge against petitioner and all elements of lesser included offenses, the record reveals Sober did in fact comprehend them well enough to weigh the facts and apply the law and enter an intelligent, predetermined plea. Petitioner's guilty plea was based upon his appreciation of the alternative consequences and was voluntarily entered upon competent advice by counsel. Therefore, the Court finds that petitioner's claims are not meritorious and the relief sought should be denied.

## CONCLUSIONS OF LAW

From the foregoing Findings of Fact, the Court makes the following Conclusions of Law:

1. Each of the above-stated Findings of Fact is hereby adopted and restated as a Conclusion of Law. Petitioner has cited two major allegations regarding his appointed attorney's ineffectiveness and these are considered individually.

*Motion to Suppress Involuntary Confession*

2. The standards applied in determining voluntariness of a confession in accordance with *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), are well established. The issue to be resolved in each confession case is whether the free will of defendant was overborne or whether the statement was a product of defendant's rational and independent determination. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Haynes v. Washington,* 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963). A confession is involuntary if precipitated by physical or psychological intimidation. *United States v. Tingle,* 658 F.2d 1332, 1335 (9th Cir.1981), *citing Townsend v. Sain,* 372 U.S. 293, 307, 83 S.Ct. 745, 754, 9 L.Ed.2d 770 (1963).

3. Assuming that the officer's statement was threatening or coercive, this fact cannot be analyzed in a vacuum. In order to determine whether the confession was derived from the officer's comments during the June 22, 1977, custodial interrogation, the Court must look to the totality of circumstances surrounding the interrogation and the characteristics of the accused. *Schneckloth v. Bustamonte, supra,* 412 U.S. at 226, 93 S.Ct. at 2047; *Boulden v. Holman,* 394 U.S. 478, 480, 89 S.Ct. 1138, 1139, 22 L.Ed.2d 433 (1969); *Haynes v. Washington, supra,* 373 U.S. at 513, 83 S.Ct. at 1343.

4. The Court concludes petitioner's previous contacts with police and his acquiescence in answering additional questions on June 22 evidences an unimpaired choice to cooperate. The only evidence before the Court which suggests petitioner's confession was coerced is the interrogating officer's police report. But Petitioner cannot now even recall whether the alleged coercion actually occurred. It defies logic that petitioner cannot now recall these underlying facts which form the foundation for his desire to pursue a motion to suppress while assuming that this Court will presume the existence of those facts. Petitioner had previously denied his involvement in the assault under similar conditions on the morning of the offense and exhibited no characteristics which suggested his will was overcome. During the June 22, 1977, interrogation, petitioner's reactions preceding his confession were consistent with his earlier responses to police questions. Therefore, petitioner has failed to prove the confession was involuntary by a preponderance of the evidence.

## Involuntary Plea

5. Petitioner apparently suggests that had he known all the facts and legal alternatives he might have pled differently. This second claim concerning ineffective counsel refers to the alleged failure of his attorney to adequately explain the nature and elements of the charge against him, all possible lesser included offenses, all possible defenses and all possible sentences should he plead guilty or be convicted. One who pleads guilty is convicted and sentenced according to his plea, not upon the evidence. *Brady v. United States,* 397 U.S. 742, 750, 90 S.Ct. 1463, 1470, 25 L.Ed.2d 747 (1970). A guilty plea is an admission by the defend-

ant that he in fact committed the offense complained of and all that remains for disposition of the case is entry of judgment and determination of sentence. *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Thus, pleading guilty to a charge forecloses a defendant's subsequent constitutional challenges to pretrial proceedings. *United States v. O'Donnell,* 539 F.2d 1233 (9th Cir.1976), *cert. denied,* 429 U.S. 960, 97 S.Ct. 386, 50 L.Ed.2d 328 (1976). To ensure defendant freely waived his constitutional rights, a valid plea of guilty must be voluntarily offered with an appreciation and knowledge of its consequences. *Steinsvick v. Vinzant,* 640 F.2d 949, 955 (9th Cir.1981), *citing Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

■ 6. However, the Court cannot assume petitioner entered his guilty plea in ignorance of the probable results. The evidence and testimony presented to the Court clearly proves the petitioner did in fact receive sufficient advice on these matters. Petitioner has the burden of establishing his alleged involuntary plea is causally derived from ineffective assistance of counsel. *Saunders v. Eyman,* 600 F.2d 728, 729 (9th Cir.1977). Petitioner is also required to establish

... that he was not informed of some element of the crime which had some relevant relationship to his plea ...

*Brown v. Crist,* 492 F.Supp. 965, 1968 (D.Mont.1980).

■ 7. Counsel was not required to explain every element in minute detail to petitioner. *Sober v. Crist,* 644 F.2d 807, 809 (9th Cir.1981) (per curiam), *citing Henderson v. Morgan,* 426 U.S. 637, 647 n. 18, 96 S.Ct. 2253, 2258 n. 18, 49 L.Ed.2d 108 (1976). However, counsel was required to explain the nature of the offense in sufficient detail to give petitioner notice of what he would be asked by the Court to admit. *Id.* at 647, 96 S.Ct. at 2258.

■ 8. The facts in this case lead us to believe that the protections set forth in *State v. Azure,* 175 Mont. 189, 573 P.2d 179

(1977), and *State v. Lewis,* 177 Mont. 474, 582 P.2d 346 (1978), would probably be applied retroactively to petitioner here. *See State v. Huttinger,* 182 Mont. 50, 595 P.2d 363, 369 (1979) (citations omitted). The Court does not believe the rules cited by *Azure* and *Lewis* were ignored or slighted in petitioner's case here. Nor do we believe the state district court interrogation failed to sufficiently affirm that petitioner's plea was an informed and intelligent admission of guilt.

9. During petitioner's September 12, 1977, hearing on his change of plea the following exchange between petitioner and the Court occurred:

THE COURT: You are charged with the crime of Attempt, and this is alleged to have occurred on or about the 16th day of June, 1977. What is your plea?

THE DEFENDANT: Guilty.

THE COURT: Has anybody promised you anything to get you to plead guilty?

THE DEFENDANT: No.

THE COURT: Or threatened you to make you plead guilty?

THE DEFENDANT: No.

THE COURT: You would have the right to have a jury trial on this charge if you wished. And in the course of that trial, all the witnesses against you would have to appear in Court where you can see them and hear them and you could have them cross-examined. And throughout all of that, you would have the right to remain silent without your silence being held or used against you.

When you plead guilty, you give up these rights. There won't be any trial or any witnesses.

Also, you do have to answer any questions I ask you about this offense.

Is that what you want to do?

THE DEFENDANT: Yes, sir.

THE COURT: You have already been advised that the possible penalty is up to 20 years in the State Penitentiary. And under this charge, what they are saying is that you attempted to have sexual intercourse without consent. Now, is that true? Is that what you did?

THE DEFENDANT: Yes, sir.

THE COURT: The record may show the Court accepts the plea of guilty being voluntarily given and with knowledge of the consequences; presentence investigation report requested.

10. Unlike *State v. Huttinger, supra,* petitioner's offense was expressly acknowledged. The record before the Court discloses that the state district judge properly qualified and correctly accepted petitioner's plea, *see, e.g., Brady v. United States, supra,* 397 U.S. at 747–48 n. 4, 90 S.Ct. at 1468–69 n. 4, and *State v. Lewis, supra,* 177 Mont. at 484, 582 P.2d 346, and that such plea was an "... intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford, supra,* 400 U.S. at 31, 91 S.Ct. at 164.

### Ineffective Representation

11. To sustain his allegations of ineffective assistance of counsel, petitioner must establish: (1) that his appointed counsel's alleged errors or omissions would not have been committed by a reasonably competent criminal attorney, and (2) that these alleged failures have prejudiced the petitioner. *United States v. Donn,* 661 F.2d 820, 824 (9th Cir.1981), *citing Cooper v. Fitzharris,* 586 F.2d 1325 (9th Cir.1978) (en banc), *cert. denied,* 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793 (1979); *United States v. Winston,* 613 F.2d 221, 223 (9th Cir.1980).

12. The retrospective differences in opinion between the petitioner and his counsel concerning the handling of this case is not tantamount to ineffective assistance of counsel. *See, e.g., Fritchie v. McCarthy,* 664 F.2d 208, 215 (9th Cir.1981). Moreover, a defendant assumes the risk of ordinary error in his or his counsel's judgment and assessment of the facts and applicable law. Standing alone, such errors are not sufficient to conclusively prove the denial of a constitutional right, *Cooper v. Fitzharris, supra,* 586 F.2d at 1330, and a defendant cannot escape the implications of his plea and the consequences of his conviction unless grievous errors by counsel are proven. *McMann v. Richardson,* 397 U.S.

759, 774, 90 S.Ct. 1441, 1450, 25 L.Ed.2d 763 (1970); *Hall v. Sumner,* 512 F.Supp. 1014, 1018–20 (N.D.Cal.1981). The evidence and petitioner's testimony reflect nothing more than a dispute over the assessment of the law and facts in this case.

13. Although the Court may find prejudice from the cumulative impact of multiple errors or from overwhelming mistake, petitioner must also prove some prejudice which materially affected the disposition of his case. *Cooper v. Fitzharris, supra,* 586 F.2d at 1333. This is true even where petitioner's claims are founded upon specific acts or omissions by his counsel. *Ewing v. Williams,* 596 F.2d 391, 395–96 (9th Cir.1979). Even if we assume petitioner's claims are meritorious, he has simply failed to show what prejudice has accrued to his detriment. Petitioner has failed to establish that his case would have been resolved differently absent the mistakes of his attorney. *See McNulty v. Olim,* 488 F.Supp. 1384, 1390 (D.Hawaii 1980), *aff'd,* 652 F.2d 1369 (9th Cir.1981). We find the evidence of guilt overwhelming even discounting the alleged coerced confession, thus lending further support to the conclusion that petitioner's plea was voluntarily entered after consultation with counsel and consideration of the available alternatives. *See, e.g., Cancino v. Craven,* 363 F.Supp. 817, 820 (C.D.Cal.1973), *citing Knowles v. Gladden,* 378 F.2d 761, 766–67 (9th Cir. 1967); *see also, Bellew v. Gunn,* 532 F.2d 1288, 1291 (9th Cir.1976), *cert. denied,* 426 U.S. 953, 96 S.Ct. 3180, 49 L.Ed.2d 1192 (1976).

14. In summary, petitioner's testimony conflicted sharply with that given by his appointed counsel concerning the crucial elements of the petition's allegations. The Court has assessed the credibility of the various witnesses and has examined the record. Petitioner's version is replete with lapses of memory and vague recollections of events which he has averred were important. In resolution of conflicting testimony and in assessing credibility, the Court finds petitioner has failed to prove his claims by a preponderance of the evidence. Petitioner

cannot now seek relief from the consequences of his plea simply because retrospection has created doubts as to the propriety of that decision. Accordingly, petitioner's request for a writ of habeas corpus must be denied.

An appropriate order shall issue in accordance with these Findings of Fact and Conclusions of Law.