No. 83-480

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

STATE OF MONTANA,

        Plaintiff and Respondent,

  -vs-

DAN P. PETERSON,

        Defendant and Appellant.

---

APPEAL FROM: District Court of the Twelfth Judicial District,
In and for the County of Hill,
The Honorable M. James Sorte, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Bosch, Kohr, Dugdale, Warner, Martin & Kaze; John
Warner, Havre, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
Ronald W. Smith, County Attorney, Havre, Montana

---

Submitted on Briefs: April 12, 1984

Decided: July 10, 1984

Filed: JUL 10 1984

*Ethel M. Harrison*

Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

This case arose in the District Court, Twelfth Judicial District, Hill County, where Dan Peterson entered a plea of guilty on September 25, 1981, to one count of mitigated deliberate homicide and one count of aggravated assault. He now appeals the order of the District Court filed June 23, 1983, denying the motion to withdraw his guilty plea.

According to the motion for leave to file an information filed January 12, 1981, in Hill County, the following occurred on January 9, 1981: Carla Peterson, who was separated from her husband, Dan, finished work and left to meet Roger McIntosh at the Shanty Bar in Havre. At the bar, Dan Peterson spoke to Roger and Carla and indicated that their seeing each other was going to cause problems. Dan then left the bar.

Carla and Roger left the bar approximately one-half hour later. They walked to Roger's vehicle and Carla got in the drivers side. She then heard a shot and saw Roger fall to the sidewalk. He had been shot in the head. She screamed and ran toward the back door of the bar. But as she ran, she was shot in the leg and fell down. Dan Peterson approached her with a rifle in his hands, and asked her if she was ready to come home. He then looked at her leg and at Roger McIntosh and immediately left the scene.

Peterson was apprehended at his mother's home shortly thereafter. His brother said that Peterson broke into his home, took a 30.06 rifle and then returned it. When Peterson's brother found the gun, it showed signs of having been recently fired.

Peterson gave notice of his intention to rely on the defense of a mental disease or defect which precluded his having the particular state of mind which is an element of the crime charged. He was eventually examined by three doctors and each gave a report that was reviewed by defense counsel.

Negotiations were conducted between Peterson and the State, culminating in a written "Offer to Plead Guilty and Pre-trial Agreement." The agreement stated that the county attorney was to amend the information to charge Peterson with one count of mitigated deliberate homicide and one count of aggravated assault rather than the original one count of deliberate homicide and one count of attempted deliberate homicide. It was upon this condition that Peterson was to plead guilty to the amended charges. The agreement also contained the following statement:

> "It is further understood by me that by entering a plea of Guilty to the charges set forth in the amended information I have waived my right to a speedy trial by jury, and have admitted each of the material elements contained in the charges filed against me. I also understand that the Court may lawfully impose up to forty (40) years in the Montana State Prison on the charge of mitigated deliberate homicide and twenty (20) years in the Montana State Prison on the charge of aggravated assault."

The agreement was given to Peterson shortly before his arraignment on September 25, 1981, and he signed it in the hallway before entering the courtroom. It was also signed by the county attorney and Peterson's two lawyers, Brian Lilletvedt and Robert Morrison.

Prior to accepting the guilty plea from Peterson, the District Court examined Peterson's two attorneys regarding their impression of Peterson's understanding of the pretrial agreement. They were questioned as to his competence and

volition in signing the agreement. The court then extensively examined Peterson regarding his knowledge of the agreement and his basis for signing the agreement and for pleading guilty. Peterson was informed of his constitutional rights and the fact that by pleading guilty he was waiving those rights as they regard this case. Peterson answered that he knew the maximum potential penalties for the crimes to which he was pleading guilty.

After thorough questioning by the court, Peterson pleaded guilty to the mitigated deliberate homicide and aggravated assault charges. On January 15, 1982, judgment was filed sentencing Peterson to 40 years imprisonment on the mitigated deliberate homicide charge, to be served consecutively with 10 years imprisonment on the aggravated assault charge.

Acting pro se, Peterson filed a notice of appeal of the judgment on March 3, 1982. Thereafter, the District Court granted Peterson's counsel leave to withdraw and appointed substitute counsel. A motion to withdraw his guilty plea was filed on April 18, 1983 and the appeal filed by Peterson was remanded by this Court for a hearing on the motion.

On June 10, 1983, the District Court held a hearing on Peterson's motion to withdraw his guilty plea. Peterson's sister-in-law, Peterson's mother, and Peterson testified on his behalf. Peterson's previous counsel and the county attorney testified for the State. An order denying Peterson's motion was filed June 23, 1983. The District Court found that:

> ". . . the defendant freely, voluntarily and on his own made the decision to plead guilty to the reduced charges and that the reduced charges were offered in exchange for his plea. All of these actions were done knowingly, freely, voluntarily

- 4 -

and without any threats, duress, pressures or coercion of any kind from any source.. . ."

On appeal, Peterson raises only the issue of whether the District Court was correct in denying his motion to withdraw the guilty plea. Upon review of the record, we affirm the District Court's action.

Peterson makes essentially five claims to support his contention that his guilty plea was made by mistake or involuntarily. First, Peterson claims that he had trouble communicating with his attorneys. Second, he claims that an article printed in the local newspaper which declared that he had pleaded guilty (before he had done so) pressured him to plead guilty. Third, he claims that he was denied a copy of the report by one of the examining doctors and was thus unable to make an informed choice. Fourth, Peterson claims that the possibility that the county attorney involved in the present case was to testify regarding Peterson's state of mind exhibited in regard to his divorce case pressured him to plead guilty. Fifth, he claims that he signed the pretrial agreement while in a state of shock and that he did not fully understand the effect of pleading guilty to mitigated deliberate homicide. Peterson contends that, taken as a whole, these circumstances induced him to plead guilty.

The District Court's discretion in deciding a motion to withdraw a guilty plea is to be relied upon unless an abuse of that discretion has been shown. State v. Lewis (1978), 177 Mont. 474, 582 P.2d 346; State v. Doty (1977), 173 Mont. 233, 566 P.2d 1388. In Lewis, this Court stated that:

> "Where a District Court has done all that it can to determine, from the defendant or otherwise, that the proposed plea of guilty is voluntarily made, the defendant understands what he is doing and is advised of the consequences of his plea, including the nature and extent of his punishment, has been

adequately advised by counsel, and has been treated fairly at all stages of the prosecution against him, and that in fact the defendant states he is guilty of the charges made, then this Court has a duty to support the District Court when it allows a plea of guilty to be entered in place of a plea of not guilty." 177 Mont. at 484, 582 P.2d at 352.

That duty requires us here to uphold the District Court's action. The court found, through questioning of Peterson and his counsel, that he was competent, acting voluntarily and that he understood the charges and possible punishment. Peterson was not acting under the influence of drugs or alcohol, admitted that his counsel were competent and kept him well-advised, and admitted in open court the facts upon which his guilt is based. We hold that because these conditions were fulfilled, the guilty plea should be upheld. Lewis, 177 Mont. at 485, 582 P.2d at 352.

Peterson's claims were not substantiated by the record of the hearing at which the District Court accepted his plea or by the record of the hearing on his motion to withdraw his plea. There was sufficient communication with his attorneys, including discussions regarding the doctors' reports and the potential uses of them in Peterson's defense. As to the newspaper report and the possibility of the county attorney testifying, Peterson made no mention or gave no indication that these influenced his guilty plea when he was interrogated by the District Court. Finally, there is no evidence to support Peterson's claim that he was not aware of the possible penalty for mitigated deliberate homicide. The record shows that he was fully interrogated as to his understanding of his plea and that he entered the plea voluntarily and without mistake.

Affirmed.

_____
John C. Shirley
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices